Cite as 2016 Ark. 345

# SUPREME COURT OF ARKANSAS

No. CR–80–40

| | |
|---|---|
| EUGENE ISSAC PITTS<br><br>                              PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br><br>                              RESPONDENT | Opinion Delivered October 20, 2016<br><br>PETITION TO REINVEST THE CIRCUIT COURT WITH JURISDICTION IN ORDER TO CONSIDER PETITION FOR WRIT OF ERROR CORAM NOBIS<br><br><u>PETITION GRANTED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

This is a companion case to *Strawhacker v. State*, 2016 Ark. 348. As in *Strawhacker*, Eugene Issac Pitts's petition for postconviction relief arises from repudiated trial testimony of FBI lab technician Michael Malone, a forensic hair analyst.

Pitts was convicted of capital felony murder for the slaying of Dr. Bernard Jones, committed in the course of a kidnapping. On June 29, 1981, Pitts's conviction was affirmed on direct appeal. *Pitts v. State*, 273 Ark. 220, 617 S.W.2d 849 (1981). Pitts now asks this court to reinvest jurisdiction in the trial court so that it may consider a writ of error coram nobis, writ of audita querela, or other relief based on newly discovered evidence. The newly discovered evidence at issue is the Department of Justice's (DOJ) repudiation of the evidence provided by Malone at Pitts's trial. We grant Pitts's petition to reinvest jurisdiction in the trial court to pursue a writ of error coram nobis or other relief.

In rejecting a challenge to the sufficiency of the evidence in Pitts's direct appeal, this court summarized the evidence presented at trial as follows:

SLIP OPINION

[T]he State's proof established Pitts's motive for murdering Dr. Jones and his various threats to do so. Mrs. Jones's statements to the police and her testimony at the trial had minor inconsistencies, but there was no variance so great as to weaken her positive identification of Pitts as the intruder in her home.[1] The FBI testimony about the hair definitely puts Pitts in contact with Dr. Jones. Pitts left the Jones house in [Dr. Jones's] Land Cruiser with Dr. Jones and the stolen articles. The body and articles were in the vehicle the next morning. Mrs. Stanley's timing of the arrival of the Land Cruiser was contradicted by Mark Musgrave and his mother. Only about three hours after the murder Pitts was unable to account for his earlier whereabouts.

*Pitts*, 273 Ark. at 226, 617 S.W.2d at 852. It also summarized Malone's testimony:

Dr. Jones's clothing was sent to the FBI laboratory for examination. An expert witness, Mike Malone, testified that he found several Caucasian hairs and a brown Negroid hair on the clothing. The Negroid hair, when examined with a microscope, had 20 different characteristics. Sample specimens of Pitts's hair had exactly the same 20 characteristics. Malone testified that as part of a test to qualify as an FBI examiner he was given 50 hairs from 50 different persons. He was also given another 50 hairs from the same persons, but they were all mixed up. He passed the test by matching all 50 pairs correctly, with no mistakes. He said that in his nine years' experience the only way he had seen hairs match the way they did in this instance was when in fact they came from the same person. He testified that his identification was not absolutely positive, like a fingerprint. The jury, however, could certainly have relied upon it in returning a verdict of guilty.

*Id.* at 224--25, 617 S.W.2d at 851--52.

Following his conviction and direct appeal, Pitts vigorously pursued his state and federal court remedies but failed to get relief.[2] Pitts's last effort was in 2011, when he filed

---

[1] Although the intruder wore a mask, Mrs. Jones identified him as Pitts, whom she had known for several years.

[2] *Pitts v. State*, CR-80-40 (Ark. Feb. 1, 1982) (unpublished per curiam) (Rule 37 relief denied); *Pitts v. Lockheart*, 753 F.2d 689 (8th Cir. 1985) (first federal habeas petition denied); *Pitts v. Lockheart*, 911 F.2d 109 (8th Cir. 1990) (second federal habeas petition denied); *Pitts v. Norris*, 85 F.3d 348 (8th Cir. 1996) (third federal habeas petition denied); *Pitts v. State*, 336 Ark. 580, 987 S.W.2d 407 (1999) (petition to proceed with a writ of error coram nobis denied); *Pitts v. State*, CR-80-40 (Ark. May 18, 2000).

a habeas petition pursuant to Arkansas Code Annotated section 16-112-201 et seq., alleging actual innocence. Pursuant to the statute, DNA testing was performed on the only hair with a follicle collected from the crime scene and the victim's body. The nuclear DNA test that was performed was inconclusive. Pitts moved to have mitochondrial DNA testing performed on other hairs, but that request was denied by the circuit court, and this court affirmed. *Pitts v. State*, 2011 Ark. 322 (per curiam). The sample that was selected for mitochondrial DNA testing was lost during the time that Pitts appealed the circuit court's denial of his request for additional testing, and it has yet to be found.

Meanwhile, in 1996, the FBI responded to allegations of improper practices by certain FBI laboratory technicians by forming a task force to ensure that no criminal defendant's right to a fair trial had been compromised. After reviewing Pitts's case, the task force determined that Pitts's trial had been tainted by Malone's testimony. In 2014, the DOJ sent letters to Pitts, the prosecuting attorney, the public defender, and the Innocence Project informing the recipients that Malone was one of thirteen examiners whose work in hair analysis failed to meet professional standards. In a letter dated February 4, 2015, the DOJ advised the prosecuting attorney of the Sixth Judicial District that "we have determined that a report or testimony regarding the microscopic hair comparison analysis containing erroneous statements was used in this case. . . . We ask that you determine the actions your office should take in light of this error." Pitts received a copy of this letter from the DOJ in a letter dated April 2, 2015. The DOJ and the FBI review concluded that there were three types of errors in Malone's testimony:

(1) [T]he examiner stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others—this type of testimony exceeded the limits of the science;

(2) the examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association—this type of testimony exceeded the limits of the science; or

(3) the examiner cites the number of cases or hair analyses worked in the laboratory and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that a hair belongs to a specific individual—this type of testimony exceeded the limits of the science.

The prosecutor from the Sixth Judicial District conceded that Malone's work was material to Pitts's conviction.

As noted previously, Pitts has asserted in his petition that this court could grant him postconviction relief in accordance with several different legal modalities. For the reasons stated in *Strawhacker v. State*, 2016 Ark. 348, we reinvest jurisdiction in the trial court and grant Pitts permission to seek relief via a writ of error coram nobis.

As we stated in *Strawhacker*, "The function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. . . . The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature." The writ is available to "fill a gap in the legal system—to provide relief that was not available at trial because a fact exists which was not known at that time and relief is not available on appeal because it is not in the record." *Id*. at ___ (citing *Penn v. State*,

282 Ark. 571, 670 S.W.2d 426 (1984)).

Petition granted.

DANIELSON and GOODSON, JJ., concur in part and dissent in part.

**PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.** I concur in part and dissent in part for the same reasons set forth in *Strawhacker v. State*, 2016 Ark. 348, handed down this same date.

**COURTNEY HUDSON GOODSON, Justice, concurring in part and dissenting in part.** I join the opinions authored by Justice Danielson in this case and that of *Strawhacker v. State*, 2016 Ark. 348, ___ S.W.3d ___. I share his view that the majority has precipitously preordained the expansion of the writ of error coram nobis without the benefit of a fully developed record. This court should be well apprised of the facts before taking such an extraordinary course of action. I write separately to express another concern that these cases may present.

At issue is the testimony of FBI agent Michael Malone concerning microscopic hair-comparison analysis. According to the Department of Justice, aspects of Malone's testimony at Pitts's trial exceeded the limits of science by overstating the probative value of hair-comparison analysis. However, as I read the record that has been provided to us in this case, it appears that the limits of this analysis may have been known at the time of the trial and long before the Department of Justice issued its most recent report. The topic was the primary focus of trial counsel's cross-examination of Malone. Indeed, Malone's written report in this case stated that hair-comparison analysis is not a basis for personal identification. In addition,

questions regarding Malone's expert testimony in this and other cases have been percolating since the late 1990s with the issuance of the 1997 OIG report.[1]  At and before that time, the appellate courts of Florida were highly critical of Malone's testimony.  *See Long v. State*, 689 So. 2d 1055 (Fla. 1997); *Horstman v. State*, 530 So. 2d 368 (Fla. Ct. App. 1988).  In January 2008, at a hearing on Pitts's petition for writ of habeas corpus, Pitts's counsel acknowledged that Malone had been discredited in a number of cases across the country.  Although I express no opinion in the matter, the timeliness of this petition and diligence are issues that might be explored once jurisdiction is reinvested in the circuit court.

*John Wesley Hall*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

*Seth Miller*, The Innocence Network; *Steven R. Morrison*, NACDL *Amicus Curiae* Committee; *Amelia R.V. Maxfield*, National Association of Criminal Defense Lawyers, *Russell L. Hirschhorn*, *Patrick Rieder*, and *Martine Seiden*, Proskauer Rose, LLP, *pro hac vice*, for amicus curiae, the Innocence Network and National Association of Criminal Defense Lawyers.

*J. Blake Hendrix*, Fuqua Campbell, PA., on behalf of attorneys for amicus curiae.

---

[1] I note that in Strawhacker's case, the letter written to him by the Department of Justice in October 2014 states that "[i]t is possible that you or your counsel previously received notice of the [1997] OIG Report and/or a copy of the Independent Scientific Review from the prosecutor's office responsible for the prosecution at issue, or that you or your counsel otherwise became aware of the criticisms, as they were widely known and the subject of many media reports."