RHONDA K. WOOD, Associate Justice |! Lonnie Strawhacker was convicted of rape in 1990. At his trial, FBI hair-comparison expert Michael Malone testified that hairs recovered from the crime scene were indistinguishable from Strawhacker’s hairs. In 1996, after allegations were raised concerning the accuracy of FBI hair examiners’ expert testimony, the Department of Justice established a Task Force to review all of their hair-comparison testimony. The Department sent letters to the relevant parties that it had concluded that thirteen examiners’ work failed to meet professional standards. In 2014, the Department notified Strawhacker that Malone was one of the thirteen who gave invalid testimony. Strawhacker filed a pro se petition with this court for leave to proceed in the circuit court with a petition for writ of error coram nobis. Strawhacker also requested appointment of counsel, which we granted. Strawhacker v. State, 2015 Ark. 263, 2015 WL 3526397 (per cu-riam). We now grant Strawhacker’s petition to reinvest jurisdiction with the circuit court to consider whether to grant coram-nobis relief. |¾1. Facts and Procedural History In August 1989, a female victim reported that she had been raped and beaten in a ditch outside a nightclub in Fayetteville.' Then, according to the victim, her assailant took her to her home in a trailer park, placed her in her bed, and joined her there. The assailant stayed the night, but when the victim woke up the next morning, he was gone. The victim called the police, but was unable to give a visual description of her assailant because she had been so badly beaten her vision was impaired. The police developed Strawhacker as a suspect and obtained a court order to conduct a voice-identification lineup. The victim identified Strawhacker’s voice as that of her assailant. In addition to this voice identification, the State presented witnesses at trial who testified that Stra-whacker had been at the nightclub near the time of the assault and, later the next morning, was seen leaving the victim’s trailer park wearing muddy jeans and with a bloody shirt his hand. Additionally, at trial, FBI supervisory special agent Michael Malone was admitted as an expert in the field of hair and fibers. Malone testified that he had worked for the FBI for nineteen years. During that time, Malone received training in hair and fiber analysis; worked on over 3500 cases; examined hair from over 10,000 people; lectured and trained others in the field of hair comparison; published articles; and testified as an expert over 350 times. In the present case, Malone stated that he examined pubic hairs recovered from Strawhacker’s jeans and from the victim’s bed sheets. Malone told the jury that the pubic hair found on Strawhacker’s jeans was “absolutely indistinguishable” from the victim’s public-hair sample. Malone also testified that the pubic hair found on the victim’s bed “exhibited exactly the lasame characteristics” as Strawhacker’s hair sample, and was “absolutely indistinguishable” and “consistent with coming from Mr. Strawhacker.” At times, Malone equivocated on the reliability of hair-comparison testimony. For instance, he stated that hair comparison was not as exact as other forms of identification: “Now, I don’t want to mislead you. It’s not a fingerprint. In other words, nobody can get a hair to the point that they can say ‘This hair came from that person and nobody else in the world.’ ” But Malone also testified that it would be “highly unlikely” that the pubic hair came from anyone other than the victim, and the chances that another person would have the same characteristics was “extremely remote.” Malone even stated that the probability of a false identification was one in five thousand. The jury convicted Strawhacker, and he was sentenced to life in prison for rape and 30 years for battery,[1] In October 2014, the Department of Justice sent Strawhacker a letter informing him that Michael Malone’s testimony “may have failed to meet professional standards.” The letter also stated that “the prosecutor in your case(s) has advised the Department of Justice that Michael Malone’s work was material to your conviction.”' In an earlier letter sent in September 20Í4, the Department informed the prosecuting attorney that Malone’s “testimony regarding microscopic hair comparison analysis ‘ contained] erroneous statements.” The Department furthér stated that Malone had “overstated the conclusions that may appropriately be drawn from a positive association.” According to the Department, Malone overstated the evidence in the following three ways, all of which exceeded the | ¿limits of science: (1) testifying that the hair could be associated with a single person to the exclusion of all others; (2) assigning a statistical weight or probability that the hair originated from a particular source; and (3) citing his past experience in the laboratory making positive hair identifications.[2] The Department said it would waive any statute-of-limitations or procedural-default defenses should a claimant file a petition for habeas corpus under 28 U.S.C. § 2255. The State has not made similar concessions. As a result of the Department’s disclosure, Strawhacker has filed a petition to reinvest jurisdiction with the circuit court to consider a petition for writ of error coram nobis. II. Writ of Error Coram Nobis The writ of error coram nobis is an extraordinary writ, known more for its denial than its approval. Echols v. State, 360 Ark. 332, 201 S.W.3d 890 (2005). The function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. Id. The writ is allowed only under compelling circumstances to achieve justice and to addréss errors of the most fundamental nature. Sanders v. State, 374 Ark. 70, 285 S.W.3d 630 (2008) “In simple terms, this writ is a legal procedure to fill a gap in the legal system—to provide relief that was not available at trial because a fact exists which was not known at that time and relief is not available on appeal because it is not in the record.” Penn v. State, 282 Ark. 571, 573-74, 670 S.W.2d 426, 428 (1984), IfiWe have held that a writ of error coram nobis is available to address certain errors that are found in one of four categories: (1) insanity at the time of trial; (2) a coerced guilty plea; (3) material evidence withheld by the prosecutor [a Brady violation]; or (4) a third-party confession to the crime during the time between conviction and appeal. Howard v. State, 2012 Ark. 177, 403 S.W.3d 38. We will grant permission for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears that the proposed attack on the judgment is meritorious. Id. In making such a determination, we look to the reasonableness, of the allegations of the petition and to the existence of the probability of the truth thereof. Id. Strawhacker first argues that co-ram hobis is a proper remedy as a Brady violation because Malone, as an agent for the State, may have withheld evidence regarding the integrity of hair-comparison analysis. Strawhacker further argues that, even if Malone and the State withheld .no evidence, the Department of Justice’s subsequent repudiation justifies expanding the coram-nobis remedy. The State responds that Strawhacker’s petition plainly does not fall within one of the four established categories. The State further argues that we should not “radically expand” the remedy to cover Strawhacker’s petition because the floodgates will open to further petitions of this kind. We hold that Strawhacker has stated sufficient grounds for us to find that his writ may be meritorious and therefore we grant his petition. The record reflects that at trial, the State spent considerable time establishing Malone’s expertise. In fact, the written record contains over eight pages of trial testimony focused on Malone’s expertise, Malone’s testimony comprises of 31 pages of the written transcript of the trial. Now the Department | (¡of Justice has put in writing that Malone’s analysis was flawed and that his conclusions exceeded the limits of science. In addition, the Department alleged, that the prosecutor found Malone’s testimony “material” to the verdict. Because Malone was an expert, proffered by the government, the subsequent repudiation of his testimony by the. government raises serious concerns due to the “aura of special reliability and trustworthiness” of expert testimony. Cf. Fukunaga v. State, 2016 Ark. 164, at 4, 489 S.W.3d 644, 646-47(citing United States v. Rosales, 19 F.3d 763, 766 (1st Cir. 1994)). This is sufficient for us to determine he met his burden to reinvest jurisdiction in the trial court. We acknowledge that Strawhacker’s claim may not neatly fall within one of the four established categories. But these categories are not set in stone. We have expanded the coram-nobis remedy in the past. See Penn v. State, 282 Ark. 571, 670 S.W.2d 426 (1984). We emphasized that expanding the grounds, for the writ was necessary to ensure due process and to provide a state remedy where none exists: The growth of the writ is attributable, certainly, to a variety of causes. A great force in its development has been that growing concept, due process of law. The federal courts now show little hesitation in overturning state convictions if a state has no remedy or refuses to exercise it where a defendant has been denied due process of law. And where the federal decisions reflect a procedural gap in a state whereby a defendant denied due process of law is remediless without recourse to the federal courts, the courts of that state may utilize co-ram nobis to fill the void. Id. at 575, 670 S.W.2d at 429 (citing John H. Haley, Comment, Coram Nobis and the Convicted Innocent, 9 Ark. L. Rev. 118 (1955)). These concerns are present here. Additionally, the Arkansas Constitution provides that for every wrong there should be á remedy: Every person is entitled to a certain remedy in the law for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, |7and without purchase; completely, and without denial; promptly and without delay; comfortably to the law. Ark. Const, art. 2, § 13. Therefore, we grant Strawhacker’s petition to reinvest jurisdiction with the circuit court. In considering the writ, the circdit court should still consider whether to grant the writ according to one of the four currently established categories. However, if the court finds that Strawhacker’s petition does not fall within one of these four categories, the court should consider whether the writ should be granted according to the “rule of reason” in this unique circumstance where: (1) the State presented expert scientific opinion at trial; (2) the expert was an agent of the government; and (3) that same government later repudiates the expert’s scientific opinion. As we stated in Penn, “the rule of reason is simply that the writ ought to be granted or else a miscarriage of justice will result.” 282 Ark. at 571, 670 S.W.2d at 429 (citing Davis v. State, 200 Ind. 88, 161 N.E. 375 (1928)). Therefore, at the hearing on the writ, if the circuit court concludes that the repudiated expert’s testimony was material, Stra-whacker is entitled to relief. Evidence is material “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Cloird v. State, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002). In other words, had it been known that the hair-comparison testimony was “erroneous,” is there a reasonable probability that the result would have been different? If so, then the court should grant the writ to prevent a • miscarriage of justice in this unique situation. The materiality of his testimony is a question for the circuit court to decide after the record has been developed at an evidentiary hearing: “[T]he reasonable-probability standard ... applies to the circuit court’s evaluation of the | ¿merits of the error coram nobis petition and not to this court’s decision to grant or deny permission to proceed with filing the petition in circuit court.” Howard, 2012 Ark. 177, at 11, 403 S.W.3d at 46. We conclude by emphasizing that coram nobis ' remains an extraordinary remedy. This case and its companion, Pitts v. State, 2016 Ark. 345, 501 S.W.3d 803, 2016 WL 6123443 are unique. We steadfastly adhere to the principle of finality. But we will not place finality over justice and due process when the government admits that its agent gave invalid expert scientific testimony at a criminal jury trial. Petition granted. Dapielson and Goodson, JJ., concur in part and dissent in part. . We affirmed on direct appeal. See Strawhacker v. State, 304 Ark. 726, 804 S.W.2d 720 (1991). . Malone testified at trial that "over the last fifteen years ,., I’ve looked at the hairs of over ten thousand people and I’ve only had two occasions over those fifteen years where I had hair from two different people that I could not tell apart.”