Cite as 2017 Ark. 20

# SUPREME COURT OF ARKANSAS

**No.** CR–16–511

| | | |
|---|---|---|
| ALVIN RAY WILLIAMS | APPELLANT | **Opinion Delivered:** February 9, 2017 |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CR94-1676] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| | | REVERSED AND REMANDED; REQUEST TO PROCEED IN FORMA PAUPERIS GRANTED; LEE D. SHORT APPOINTED AS COUNSEL IN THE CIRCUIT COURT. |

**ROBIN F. WYNNE, Associate Justice**

Alvin Ray Williams appeals from an order of the Pulaski County Circuit Court denying his petition for writ of error coram nobis. He argues on appeal that this court should reverse the circuit court's order denying his petition and order a new trial, or if this court determines that immediate relief is unwarranted in light of the current record, he asks that this court reverse and remand for factual development and a reasoned opinion. If the case is remanded, he also asks that this court reverse the circuit court's denial of his request to proceed in forma pauperis and appoint counsel. We find merit in his arguments and reverse and remand for an evidentiary hearing and an order containing findings of fact. We also grant his request to proceed in forma pauperis and appoint Lee D. Short as counsel.

In November 1994, Williams was found guilty by a jury of first-degree murder and sentenced to life imprisonment. This court affirmed on direct appeal. *Williams v. State*, 325

SLIP OPINION

Ark. 432, 930 S.W.2d 297 (1996). This court subsequently affirmed the denial of Williams's petition for postconviction relief under Rule 37. *Williams v. State*, No. CR 97-1020 (Ark. Dec. 10, 1998) (unpublished per curiam). In December 2015, Williams filed a petition asking this court to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis.[1] The State filed a response. This court granted Williams's petition by syllabus entry on January 7, 2016.

After this court granted permission to proceed, Williams filed his petition for writ of error coram nobis in the Pulaski County Circuit Court. The basis for his petition is a *Brady* claim. Williams was convicted of first-degree murder in the shooting death of Ron Henry; he asserted that the shooting was justified by self-defense. He contends that the prosecution failed to disclose an exculpatory statement by a witness that supported his claim that Henry pulled the gun and he (Williams) obtained the gun in their struggle and shot Henry in self-defense.

The circuit court entered an order denying Williams's petition, stating as follows: "On the 15th day of March 2016, Petitioner's *Petition for Writ of Error Coram Nobis* filed on February 5, 2016 came on for consideration. The court finds that Petitioner's *Petition for Writ of Error Coram Nobis* should be and hereby is Denied." On the same date, the circuit court entered an order denying Williams's motion to appoint counsel and to proceed in forma pauperis, also without findings. Williams filed a motion for reconsideration and for

---

[1] The circuit court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Pitts v. State*, 336 Ark. 580, 582, 986 S.W.2d 407, 409 (1999).

SLIP OPINION

ruling and a renewed motion to proceed in forma pauperis, both of which the circuit court denied. This appeal followed.

This court's standard for considering a petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis is as follows:

> This court will grant permission for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears the proposed attack on the judgment is meritorious. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof.

*Howard v. State*, 2012 Ark. 177, at 5, 403 S.W.3d 38, 43. Furthermore, although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *Philyaw v. State*, 2014 Ark. 130, at 6 (per curiam). The essence of the writ of error coram nobis is that it is addressed to the very court that renders the judgment where injustice is alleged to have been done, rather than to an appellate or other court. *State v. Larimore*, 341 Ark. 397, 406, 17 S.W.3d 87, 92 (2000) (citing *Black's Law Dictionary* 337 (6th. ed. 1990)).

Under these standards, we agree with Williams's argument that the circuit court was required to do more than deny Williams's petition without allowing discovery, holding an evidentiary hearing, or making any findings of fact. In granting Williams's petition, this court necessarily found that his petition for writ of error coram nobis appeared to be meritorious. As it now stands, the circuit court reviewed the exact same record as was before this court, determined that the petition did *not* have merit, and denied the petition without findings of fact. *Cf. Penn v. State*, 282 Ark. 571, 577, 670 S.W.2d 426, 429 (1984) ("If [the petition for writ of error coram nobis] has merit, by all means a writ should be

granted; if the petitioner fails in his burden of proof, then at least a hearing will have resulted. There will be no void in the system as there is now.")

The State responds by arguing that the circuit court's order should be affirmed for lack of diligence or for failure to demonstrate a reasonable probability that the judgment would not have been entered had the statement been available to Williams at trial. The State further argues that, at most, Williams is entitled only to a remand for further factual development because thus far he has only alleged, not proved, that the prosecution withheld Smith's statement from him and his trial counsel. We note that the State made substantially similar arguments regarding diligence and the merits in its response brief before this court on the petition to reinvest jurisdiction, but this court nonetheless granted the petition. Thus, these arguments have been considered by this court previously and rejected.[2] We reverse and remand the circuit court's order denying Williams's petition for writ of error coram nobis, and we direct the court to hold an evidentiary hearing and enter an order making specific findings as to whether Williams is entitled to relief.

The final point on appeal concerns whether the circuit court erred in denying Williams's motion to proceed in forma pauperis and have counsel appointed. Present counsel, John C. Williams, states that he has represented Williams pro bono in this matter, but he does not presently have the time to continue to do so. He states that Lee D. Short has stated that he is willing to accept appointment in this matter.

---

[2] While we recognize that a petition to reinvest jurisdiction to consider a writ of error coram nobis will be denied where this court finds as a matter of law that a petitioner failed to exercise due diligence, *see Howard v. State*, 2012 Ark. 177, at 13, 403 S.W.3d 38, 47, we did not so find in this case.

SLIP OPINION

This court has stated that in regards to postconviction matters, there is no absolute right to counsel. *Strawhacker v. State*, 2015 Ark. 263, at 2 (per curiam) (citing *Howard v. Lockhart*, 300 Ark. 144, 777 S.W.2d 223 (1989) (per curium)). Nevertheless, this court has held that if an appellant makes a substantial showing that he is entitled to relief in a postconviction matter and that he cannot proceed effectively without counsel, we will appoint counsel. *Id*. Having considered the affidavit in support of his request to proceed in forma pauperis and the specific circumstances of this case, we grant Williams in forma pauperis status and appoint Lee D. Short to represent him in this matter.

Reversed and remanded; request to proceed in forma pauperis granted; Lee D. Short appointed as counsel in the circuit court.

HART, J., concurs.

KEMP, C.J., and WOOD, J., dissent.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree with the majority that this case was properly remanded to the circuit court inasmuch as its actions upon prior remand were completely indistinguishable from the actions that once again placed this case before us. I write separately because it is time for this court to dispose of "due-diligence" associated with our error coram nobis jurisprudence.

First consider the black-letter law regarding error coram nobis in Arkansas. We have so often said the following it is axiomatic: error coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *See, e.g.*, *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The *Howard* court set out the boilerplate that appears regularly in our decision denying relief.

> A writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. For the writ to issue following the affirmance of a

conviction and sentence, the petitioner must show a fundamental error of fact extrinsic to the record. The function of the writ is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. The writ is issued only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. We have held that a writ of error coram nobis is available to address certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal.

*Id*. at 4, 403 S.W.3d at 42–43 (internal citations omitted). Further, the *Howard* court noted that

[t]his court will grant permission for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears the proposed attack on the judgment is meritorious. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof.

*Id*. at 5, 403 S.W.3d at 43 (quoting *Flanagan v. State*, 2010 Ark. 140, at 1 (per curiam). Adding a requirement that the petitioner act with "due diligence" to this already dauntingly difficult burden is contrary to purpose of the writ. It should not be a stumbling block to error coram nobis relief when the writ is only issued to achieve justice when there has been a fundamental and manifest injustice.

Furthermore, the concept of "due diligence" is completely devoid of any objective standard. We need only consider the companion cases of *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716, and *Pitts v. State*, 2016 Ark.345, 500 S.W.3d 803. In those cases, we reinvested jurisdiction in the trial court to consider the effect of repudiated trial testimony of FBI lab technician Michael Malone, a forensic hair analyst. Pitts had been incarcerated since 1981 and Strawhacker since 1990. Both men were notified that the Department of Justice (DOJ) had repudiated Malone's testimony in 2014. However, the substance of the

DOJ letter was that Malone's testimony was infirm because he had offered an expert opinion that exceeded the bounds of the science he practiced—microscopic hair analysis. However, it was apparent that Malone's testimony was infirm for that reason the very day that he gave it.[1] Moreover, neither Pitts's nor Strawhacker's action upon receipt of the DOJ notification that it was repudiating Malone's testimony was exactly instantaneous. In short, when this court has seen a case in which there has been an apparent, manifest denial of justice, "due diligence" is never an issue. The people of the State of Arkansas gain nothing by unjustly imprisoning one of its fellow citizens.

**RHONDA K. WOOD, Justice, dissenting.** I dissent because appellant is not entitled to the relief sought. Williams did not exercise due diligence in requesting his petition for writ of error coram nobis relief. This court, without issuing a written opinion, granted Williams's petition to reinvest jurisdiction in the circuit court to consider error

---

[1] The DOJ and the FBI review concluded that there were three types of errors in Malone's testimony:

> (1) [T]he examiner stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others—this type of testimony exceeded the limits of the science;

> (2) the examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association—this type of testimony exceeded the limits of the science; or

> (3) the examiner cites the number of cases or hair analyses worked in the laboratory and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that a hair belongs to a specific individual—this type of testimony exceeded the limits of the science.

*Pitts*, *supra*.

coram nobis relief.[3]  The circuit court, also without making specific written findings, could find lack of due diligence absent a hearing.  Therefore, the circuit court did not abuse its discretion in denying the writ.  I would affirm.

Contrary to the majority's opinion today, when this court reinvested jurisdiction in the circuit court it did not tacitly reject the State's due-diligence argument.  More importantly, the circuit court could not have known what this court considered and rejected because the court did not issue a written opinion explaining its reasons or purpose for reinvesting jurisdiction.  Typically, when an error coram nobis claim has apparent merit, this court has left it to the circuit court to determine the issue of due diligence.  *See Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38; *Cloird v. State*, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002) (per curiam) ("[F]inally, coram nobis proceedings require the petitioner to show that he proceeded with due diligence in making application for relief. Accordingly, the trial court should consider whether petitioner raised the possible *Brady* violation in a timely manner.") (internal citations omitted); *see also Larimore v. State*, 327 Ark. 271, 281–82, 938 S.W.2d 818, 823 (1997) ("As the trial court considers whether to grant the writ, the following guidelines are applicable . . . Due diligence is required in making an application for relief, and, in the absence of a valid excuse for delay, the petition will be denied.").  The circuit court could have denied the writ of error coram nobis for lack of due diligence after reviewing the parties' motions and the evidence attached thereto.  Such an analysis would not require the circuit court to hold a hearing.

---

[3] Notably, I dissented from the grant of Williams's petition to reinvest jurisdiction in the circuit court.

The majority contends that the circuit court should have explained why it was denying relief in its written order, but this is inconsistent with our own practice. Just as we are not required to explain why we reinvest jurisdiction, before today, we have never held that a circuit court must make written findings of fact in denying or granting a writ of error coram nobis. Our role is to determine whether the decision denying the writ was an abuse of discretion because the circuit court acted arbitrarily or groundlessly. *Nelson v. State*, 2014 Ark. 91, 431 S.W.3d 852. If we conclude that the circuit court's decision was not an abuse of discretion, we should affirm irrespective of whether a hearing was held. Because Williams did not diligently pursue his *Brady* violation, the circuit court properly denied Williams relief. Therefore, we should affirm.

Upon considering whether Williams acted with due diligence given the facts he offered to the circuit court, the circuit court did not abuse its discretion in denying relief. Due diligence requires that (1) the defendant be unaware of the fact at the time of trial; (2) he could not have, in the exercise of due diligence, presented the fact at trial; and (3) upon discovering the fact, he did not delay bringing the petition. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61.

Williams's allegation of a *Brady* violation is founded on an exculpatory statement obtained from his companion, Smith, on the evening of the murder. The statement provides that Smith was with Williams when the altercation with the victim began but that he fled the scene shortly after the gun emerged and before the victim was shot.

Under these circumstances, Williams did not exercise due diligence. First, Williams was aware of all the facts contained in the statement because he witnessed the same events.

Williams also was aware of Smith's identity and presence at the scene, and in the exercise of due diligence, he could have located Smith and called him as a witness at trial.

Finally, Williams unnecessarily delayed bringing the petition. Williams first learned of Smith's statement in September 2010, following a Freedom of Information Act request. Yet he did not file his petition until December 2015, more than five years later. We previously have held that a five-year delay in requesting error coram nobis relief is not diligent. *Thomas v. State*, 367 Ark 478, 483, 241 S.W.3d 247, 250 (2006) (per curiam). Williams attempts to circumvent this five-year delay by arguing that he did not have a claim until 2014 when he received the prosecutor's file containing the statement. He mistakenly assumes that a *Brady* violation arises only after there is evidence that the prosecutor had the allegedly undisclosed statement. A *Brady* violation occurs when the State, regardless of whether it is law enforcement or the prosecutor's office, withholds evidence. *Howard v. State*, 2012 Ark. 177, at 10, 403 S.W.3d at 45. Therefore, even if everything appellant alleges factually is true, his *Brady*-violation claim became known to him once he received the police file and discovered Smith's statement to police. It is factually irrelevant whether Smith's statement turned up in the prosecutor's file when it was obtained in 2014. Because the circuit court was correct for denying his writ, I would affirm.

KEMP, C.J., joins.

*John C. Williams*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.