KAREN R. BAKER, Associate Justice
On April 27, 2018, petitioner, Ricky Lee Scott, filed his fifth pro se petition requesting permission to proceed with a petition for writ of error coram nobis in the trial court; he also filed a motion for appointment of counsel. On May 7, the State responded to Scott's petition. On May 29, Scott (1) filed a motion for leave to file a reply to the State's response; (2) tendered his reply; and (3) filed a second amended reply to the State's response. On August 30, Scott filed a third amended reply to the State's response, and on October 12, he filed a fourth amended reply to the State's response.
*453 I. Nature of the Writ
The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. Newman v. State , 2009 Ark. 539, 354 S.W.3d 61. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. Green v. State , 2016 Ark. 386, 502 S.W.3d 524 ; Westerman v. State , 2015 Ark. 69, 456 S.W.3d 374 ; Roberts v. State , 2013 Ark. 56, 425 S.W.3d 771. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. Newman , 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. Roberts , 2013 Ark. 56, 425 S.W.3d 771. It is the petitioner's burden to show that a writ of error coram nobis is warranted. This burden is a heavy one because a writ of error coram nobis is an extraordinarily rare remedy. Jackson v. State , 2017 Ark. 195, 520 S.W.3d 242.
II. Grounds for the Writ
The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. Id. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. Howard v. State , 2012 Ark. 177, 403 S.W.3d 38. This court will grant permission to proceed with a petition for the writ only when it appears that, looking to the reasonableness of the allegations of the proposed petition and the existence of the probability of the truth of those allegations, the proposed attack on the judgment is meritorious. Isom v. State , 2015 Ark. 225, 462 S.W.3d 662. Additionally, reassertion of the same claims without sufficient facts to distinguish the claims from those raised in a previous coram nobis petition is an abuse of the writ and subjects the petition to dismissal. Jackson , 2017 Ark. 195, 520 S.W.3d 242 ; see also United States v. Camacho-Bordes , 94 F.3d 1168 (8th Cir. 1996) (holding that res judicata did not apply to bar a second petition for writ of error coram nobis, but abuse-of-writ doctrine was applied to subsume res judicata). Due process does not require this court to entertain an unlimited number of petitions to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in a particular case. This court has the discretion to determine whether the renewal of a petitioner's application for the writ will be permitted to go forward even if there are additional facts in support of repetitive grounds. Chatmon v. State , 2017 Ark. 229.
Further, Scott invokes Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as a ground for the writ and claims that government action violated his due process rights. The mere fact that a petitioner alleges a Brady violation is not sufficient to provide a basis for the writ. Wallace v. State , 2018 Ark. 164, 545 S.W.3d 767 ; see also Penn v. State , 282 Ark. 571, 670 S.W.2d 426 (1984) (a mere naked allegation that a constitutional right has been invaded will not suffice to warrant coram nobis relief). To establish a Brady violation, the petitioner must satisfy three elements: (1) the evidence at issue must be favorable to the accused, either *454 because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. Howard , 2012 Ark. 177, 403 S.W.3d 38.
III. Background
In 1998, the Cross County Circuit Court convicted Scott of first-degree murder and sentenced him to a term of life imprisonment, which we affirmed in Scott v. State , 337 Ark. 320, 322, 989 S.W.2d 891, 892 (1999). On direct appeal, we summarized the facts as follows: Scott was arrested on March 5, 1996, for the murder of fifteen-year-old Robert Smith, which had occurred the previous day at the home of Smith's aunt. The evidence showed that Smith and four other persons were in the driveway changing a tire on his aunt's car when Scott went around to the side of the house and began firing a gun. Several eyewitnesses identified Scott as the person who shot Smith. Scott was tried and convicted on March 11, 1998, more than two years after his arrest. Before the court in this case is Scott's fifth petition seeking permission to reinvest jurisdiction in the trial court to pursue his claim of writ of error coram nobis alleging prosecutorial misconduct.
IV. Current Petition and Factual Allegations
In his petition, Scott requests permission to reinvest jurisdiction in the circuit court to file a petition for writ of error coram nobis alleging that there was prosecutorial misconduct committed by Deputy Prosecuting Attorney Joseph Boeckmann. Scott asserts that he was prosecuted because he refused Boeckmann's sexual advances. Scott further contends that he was victimized by Boeckmann and suffered the burden of undue criminal charges and punishments.
Scott first makes claims regarding an alleged rape charge and contends that on October 24, 1995, he was "being held on a rape charge." Scott alleges that he interacted with Boeckmann, who released Scott and stated, "that a warrant had not been issued for this person." Additionally, Scott contends that on October 27, 1995, he went to the Municipal Court Building to talk to Boeckmann about "what had occurred a few days earlier." At this point, Scott contends that Boeckmann "propositioned me indicating that I owed him for doing me a favor. He wanted me to submit to a sexual act, but I flatly refused and left. It was at this point that a number of unexplained extraordinary events began." Scott contends that on March 25, 1996, he was arraigned on murder charges, and Boeckmann stated that Scott had a rape charge pending in the same court. The circuit court ruled that it did not have a rape-case file and that it had been lost or misplaced. Scott contends that this notice of the rape charge was an "utter surprise," and although he subsequently obtained the documents supporting the rape charge, the documents were unsigned and a "fabrication" of events.
In addition, Scott asserts that in his murder investigation, Boeckmann knowingly suppressed evidence in violation of his due-process rights-Scott's Lakers jersey and his hiking boots-that were relevant to the shooter's identification at trial. Scott also contends that in late March 1997, Boeckmann knowingly provided Scott with eyewitness statements by a law enforcement officer. In sum, Scott alleges witness tampering, Brady violations, tampering and fabrication of evidence. Scott contends that this new evidence regarding Boeckmann "adversely affect[ed] my case, violating due process, and sheds light onto *455 how he did so.... Boeckmann's attempts to manipulate and even threaten witnesses against him makes me believe he did the same as a deputy prosecuting attorney.... I was very much disturbed to discover, after reading about another victim in the 1980s facing criminal charges, that Boeckmann had done to him exactly what he did to me after rebuffing his sexual advances: manipulate the legal system to exact a harsh punishment. Unfortunately, Boeckmann's actions were known to be mirrored by Officer Spears, wherein he too used his police office and powers to manipulate [people] to perform sexual favors under the guise of clearing fees."
The crux of Scott's ground for the writ in all of his petitions-including the one now under consideration-allege prosecutorial misconduct concerning witness statements and prosecutorial misconduct. See Scott v. State , 2010 Ark. 363, 3-5, 2010 WL 3796227. Scott relies on Strawhacker v. State , 2016 Ark. 348, 500 S.W.3d 716, for the proposition that where the record shows the government itself has conceded the potential for reliance on tainted evidence at trial, coram nobis is an appropriate remedy in assessing whether the repudiated evidence warrants relief from the conviction. In Strawhacker , the Department of Justice informed the prosecuting attorney that FBI witness Michael Malone's "testimony regarding microscopic hair comparison analysis contain[ed] erroneous statements." The Department further stated that Malone had "overstated the conclusions that may appropriately be drawn from a positive association." Strawhacker , 2016 Ark. 348, at 3, 500 S.W.3d 716, 718 (alteration in original). The FBI then informed Strawhacker that "the prosecutor in your case(s) has advised the Department of Justice that Michael Malone's work was material to your conviction." We granted the petition to reinvest jurisdiction and explained:
We acknowledge that Strawhacker's claim may not neatly fall within one of the four established categories. But these categories are not set in stone. We have expanded the coram-nobis remedy in the past. See Penn v. State , 282 Ark. 571, 670 S.W.2d 426 (1984). We emphasized that expanding the grounds for the writ was necessary to ensure due process and to provide a state remedy where none exists:
The growth of the writ is attributable, certainly, to a variety of causes. A great force in its development has been that growing concept, due process of law. The federal courts now show little hesitation in overturning state convictions if a state has no remedy or refuses to exercise it where a defendant has been denied due process of law. And where the federal decisions reflect a procedural gap in a state whereby a defendant denied due process of law is remediless without recourse to the federal courts, the courts of that state may utilize coram nobis to fill the void.
Id. at 575, 670 S.W.2d at 429 (citing John H. Haley, Comment, Coram Nobis and the Convicted Innocent , 9 Ark. L. Rev. 118 (1955)). These concerns are present here.
Id. at 6, 500 S.W.3d at 719.
Scott asserts that the record of the proceedings with the Arkansas Judicial Discipline and Disability Commission and the United States District Court would provide conclusive support for Scott's argument that Boeckmann engaged in misconduct and criminality during the course of his employment with the State and satisfies the Strawhacker holding that the government has conceded wrongdoing based on Boeckmann's actions. Scott urges this court to grant permission to reinvest *456 jurisdiction, which will permit Scott to investigate and develop his claims. Additionally, he requests that the court extend its holding in Strawhacker to include an allegation that Scott's refusal of sexual advances satisfies the prosecutorial-misconduct claim.
We do not find merit in Scott's arguments. First, Scott does not satisfy any ground for granting the writ because he does not allege that there was any evidence extrinsic to the record that was hidden from the defense or that was unknown at the time of trial. Larimore v. State , 327 Ark. 271, 938 S.W.2d 818 (1997). Second, Scott fails to offer facts sufficient to warrant granting leave to proceed in the trial court for the writ. See Jackson , 2017 Ark. 195, at 7, 520 S.W.3d at 247. The application for coram nobis relief must make full disclosure of specific facts relied on as the basis for the writ. Martinez-Marmol v. State , 2018 Ark. 145, 544 S.W.3d 49. Here, Scott makes allegations but does not offer factual support for his claims.
Additionally, Scott has failed to demonstrate prejudice. Despite Scott's allegations of egregious conduct on Boeckmann's part, Scott has not demonstrated prejudice because Scott has failed to demonstrate Boeckmann's involvement in witness statements in this case. Further, Scott has failed to identify evidence that contradicts the initial eyewitness statements that identified Scott as the shooter. The record also demonstrates that eyewitnesses testified at trial and identified Scott as the shooter. In other words, despite Boeckmann's alleged conduct, Scott has not demonstrated that the witnesses who initially identified him had been influenced before making those statements or that the result at trial would have been different. Finally, Scott offers no proof that the State suppressed any specific evidence pertaining to Deputy Prosecuting Attorney Boeckmann. Mosley v. State , 2018 Ark. 152, 544 S.W.3d 55 (holding that a Brady violation occurs if the defense was prejudiced because the State wrongfully withheld evidence from the defense prior to trial). Davis v. State , 2019 Ark. 20, at 6-7, 566 S.W.3d 111, 115-16.
Petition denied; motion to file reply granted;[1] motion to appoint counsel moot.

The clerk is directed to file the petitioner's four tendered replies to the State's response as of this date.