Cite as 2020 Ark. 408

# SUPREME COURT OF ARKANSAS

No. CR-07-277

| | | |
|---|---|---|
| JIMMY SMITH | | **Opinion Delivered:** December 10, 2020 |
| | PETITIONER | |
| V. | | PRO SE THIRD PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS |
| STATE OF ARKANSAS | | [PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION, NO. 60CR-06-1007] |
| | RESPONDENT | |
| | | PETITION DENIED. |

**JOHN DAN KEMP, Chief Justice**

Petitioner Jimmy Smith was found guilty by a jury in 2006 of murder in the first degree in the death of Corte Beaver for which he was sentenced as a habitual offender to 720 months' imprisonment. The Arkansas Court of Appeals affirmed. *Smith v. State*, CR-07-277 (Ark. App. Feb. 6, 2006) (unpublished) (original docket number CACR07-277). Smith subsequently filed in the trial court a pro se petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2006), which was denied. Smith appealed the denial, and the appeal was dismissed. *Smith v. State*, 2010 Ark. 122 (per curiam). Now before the court is Smith's pro se third petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. In his petition, Smith contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose favorable treatment granted to a key witness, Brenda Gonzalez, in exchange for her trial testimony; that the State

failed to disclose the transcript of a 911 call made by Gonzalez; and that there was newly discovered evidence from the trial of Smith's codefendant regarding the testimony of a witness, Jessica Sanchez. Because Smith has failed to demonstrate in the petition that the writ should issue and because some of his claims are successive, the petition is denied.

## I. *Writ of Error Coram Nobis*

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Green v. State*, 2016 Ark. 386, 502 S.W.3d 524. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999). A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material

2

evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. The burden is on the petitioner in the application for coram nobis relief to make a full disclosure of specific facts relied upon and not to merely state conclusions as to the nature of such facts. *McCullough v. State*, 2017 Ark. 292, 528 S.W.3d 833.

While allegations of a *Brady* violation fall within one of the four categories of fundamental error that this court has recognized in coram nobis proceedings, the fact that a petitioner alleges a *Brady* violation alone is not a sufficient basis for error coram nobis relief. *Oliver v. State*, 2020 Ark. 233, 602 S.W.3d 76. To merit relief on a claim of a *Brady* violation, a petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed. *Jackson v. State*, 2017 Ark. 195, 520 S.W.3d 242. There are three elements to a *Brady* violation: (1) the evidence at issue must be favorable to the accused either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Carner v. State*¸ 2018 Ark. 20, 535 S.W.3d 634. Before the court can determine whether a *Brady* violation has occurred, the petitioner must first establish that the material was available to the State prior to trial and that the defense did not have it. *Carner*, 2018 Ark. 20, 535 S.W.3d 634.

II. *Abuse of the Writ*

3

Smith continues to argue—as he has in prior coram nobis petitions—that, although Gonzalez testified that the victim made a dying declaration that Smith had shot him, Gonzalez failed to relay those statements to first responders. Although Smith has elaborated on the argument to a degree, noting that Gonzalez failed to relay her statements to first responders, the argument remains the same as those raised twice before. *See Smith v. State*, 2018 Ark. 396, 562 S.W.3d 211; *Smith v. State*, 2016 Ark. 17, 479 S.W.3d 550 (per curiam). Reassertion of the same claims without sufficient facts to distinguish the claims from those raised in a previous coram nobis petition is an abuse of the writ and subjects the petition to dismissal. *Henington v. State*, 2020 Ark. 11, 590 S.W.3d 736. The claim concerning Gonzalez's testimony is nothing more than an attack on the witness's credibility, and those claims are not within the scope of the writ. *Id.*, 590 S.W.3d 736. Smith has not alleged facts sufficient to distinguish the claim in the instant petition from the claim raised in the earlier petitions.

III. *Grounds for Relief*

A. Prosecution Deal with Witness

Smith contends that the State failed to disclose that Gonzalez's pending charges would be dropped in exchange for her testimony. Specifically, he contends that Gonzalez had charges transferred from Saline County to Pulaski County, that she "bounded out" after she testified, and that "all of her charges and jail time were dismissed" after she testified. As support for his claims, Smith attached what purports to be a Pulaski County docket sheet for Brenda Lee Gonzalez. Smith has failed to establish a basis for issuance of the writ.

4

In Smith's direct appeal,[1] it was noted that the trial court ruled that Smith would be permitted to ask Gonzalez if she had any expectation of help from the prosecutors or the State, but questioning about Gonzalez's Saline County conviction would not be allowed. *See Smith*, CR-07-277. Smith's counsel argued that he should be able to question Gonzalez about her motive to testify favorably for the State in hopes of not having to serve her one-year sentence. Although the trial court ruled that counsel could not make that inquiry, Gonzalez did testify during cross-examination that she was a prostitute, that she did not have an expectation that the State would help her, and that the State had not offered any assistance to her in exchange for her testimony. Gonzalez admitted she was a prostitute and had been a crack addict although she had not taken any crack on the night in question.

From the documents presented by Smith and the testimony given by Gonzalez, Gonzalez's Saline County charge had been disposed of before she testified, making Smith's claim that Gonzalez's charges were transferred from one county to another unfounded, at best.[2] More importantly, the question whether Gonzalez testified with the understanding that she may or may not receive any benefit for her testimony was presented at the time of trial. *See Joiner v. State*, 2019 Ark. 279, 585 S.W.3d 161. It is evident that Smith's claims are

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without the need to supplement the record. *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

[2]Contrary to Smith's contention, the other supporting documents do not indicate that Gonzalez had all of her charges and jail time dismissed.

5

not extrinsic to the record, and Smith has failed to demonstrate that he is entitled to coram nobis relief.

## B. 911 Transcript

Smith claims that the prosecutor failed to disclose the 911 transcript, resulting in a *Brady* violation. Although Gonzalez testified, Smith claims the 911 transcript was not in his discovery records, and the prosecutor's failure to disclose the 911 transcript before trial prejudiced Smith's defense because he was unable to utilize "vital impeachment evidence." The direct-appeal record indicates that Gonzalez testified and referenced the 911 call that she had made. The 911 call was played during Smith's trial, and Smith offers nothing to demonstrate that a transcript was made and that the State hid or withheld a transcript from the defense.

The petitioner seeking to reinvest jurisdiction in the trial court to proceed with a coram nobis petition bears the burden of presenting facts to support the claims for the writ because an application for the writ must make a full disclosure of specific facts relied upon and not merely state conclusions as to the nature of such facts. *Howard*, 2012 Ark. 177, 403 S.W.3d 38. A bare allegation that a constitutional right has been invaded will not suffice. *Cloird v. State*, 357 Ark. 446, 182 S.W.3d 477 (2004). Because the 911 call was played during the trial, Smith fails to demonstrate the extent and manner of "impeachment" evidence of which he was deprived by the lack of a 911 transcript—one that he failed to demonstrate existed or was withheld.

## C. Third-Party Witness

Smith contends that exculpatory findings from his codefendant's trial, which occurred after his, would have changed the outcome in his trial. Specifically, he contends that a material witness, Jessica Sanchez, testified during the codefendant's trial in November 2006 that she was with the codefendant when the victim was shot; the codefendant was acquitted. Smith has attached to his petition to reinvest jurisdiction an undated affidavit allegedly from Sanchez, which essentially states that Smith and the codefendant were with her at a friend's residence when they all heard the gunshots related to the victim's shooting and that although she gave a statement to the Little Rock Police Department, no one contacted her to testify in Smith's trial.

Although Smith relies on *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716, to support his claim that he is entitled to coram nobis relief, his reliance is misplaced. In *Strawhacker*, this court stated that even if the claims in the petition did not fall neatly within one of the four recognized categories of error, the writ may be used to fill a procedural gap if, under the unique circumstances at hand, the rule of reason calls for a grant of the writ to prevent a miscarriage of justice. *Id.*, 500 S.W.3d 716. We instructed the trial court to grant the writ if it found that the repudiated testimony was material. *Id.*, 500 S.W.3d 716. This court further explained that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*, 500 S.W.3d 716; *see Pitts v. State*, 2020 Ark. 7, 591 S.W.3d 786.

Here, Smith does not allege that he was not aware of Sanchez at the time of his trial or that the prosecution withheld her existence; rather, he alleges that he was convicted on

Gonzalez's uncorroborated testimony—an attack made many times over—and that because Sanchez testified in his codefendant's trial and the codefendant was acquitted, the failure to call Sanchez in his trial was a *Brady* violation. Although Smith contends that Sanchez's testimony in his codefendant's trial was the basis for the codefendant's acquittal, he does not provide any demonstrable proof that her testimony was the basis of the acquittal or that it would somehow serve as a basis for granting the writ in this matter. Simply put, Smith fails to demonstrate that the State withheld evidence. The decision to call Sanchez as a witness may have been an option, albeit one that was not exercised by counsel. Smith's claim is nothing more than a claim of ineffective assistance of counsel for failure to call a witness, and allegations of ineffective assistance of counsel do not support issuance of the writ. *Henington*, 2020 Ark. 11, 590 S.W.3d 736. Coram nobis proceedings are not to be used as a substitute for timely raising claims of ineffective assistance of counsel under Rule 37.1. *Id.*, 590 S.W.3d 736.

Petition denied.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I agree that the portion of Smith's request for error coram nobis relief premised upon his allegations about the 911 call should be denied—the 911 call was introduced at trial, so it is not a fact extrinsic to the record, and error coram nobis relief is therefore inappropriate. *See, e.g., Howard v. State*, 2012 Ark. 177, at 4, 403 S.W.3d 38, 42 ("For the writ to issue following the affirmance of a conviction and sentence, the petitioner must show a fundamental error of fact extrinsic to the record.").

However, an evidentiary hearing is warranted for Smith's claims concerning whether there was an undisclosed arrangement between the prosecutor and witness Gonzalez for Gonzalez's testimony against Smith. Smith's petition contains documentation reflecting that Gonzalez received dismissals of certain criminal charges against her at almost the same time she testified against Smith. The majority notes that Smith was permitted to question Gonzalez as to whether any such agreement existed, which she responded to in the negative at trial, but Smith could inquire no further. If an agreement actually existed, as the documentation attached to Smith's petition suggests, then it would be a violation to withhold that information from Smith's defense and from the jury. *See Giglio v. United States*, 405 U.S. 150 (1972); *see also Brady v. Maryland*, 373 U.S. 83 (1963). Accordingly, we need an evidentiary hearing to determine the truth.

*Jimmy Smith*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.