JOSEPHINE LINKER HART, Associate Justice | tThis is a companion case to Strawhacker v. State, 2016 Ark. 348, 500 S.W.3d 716. As in Strawhacker, Eugene Issac Pitts’s petition for postconviction relief arises from repudiated trial testimony of FBI lab technician Michael Malone, a forensic hair analyst. Pitts was convicted of capital felony murder for the slaying of Dr. Bernard Jones, committed in the course of a kidnapping. On June 29, 1981, Pitts’s conviction was affirmed on direct appeal. Pitts v. State, 273 Ark. 220, 617 S.W.2d 849 (1981). Pitts now asks this court to reinvest jurisdiction in the trial court so that it may consider a writ of error coram nobis, writ of audita querela, or other relief based on newly discovered evidence. The newly discovered evidence at issue is the Department of Justice’s (DOJ) repudiation of the evidence provided by Malone at Pitts’s trial. We grant Pitts’s petition to reinvest jurisdiction in the trial court to pursue a writ of error coram nobis or other relief. In rejecting a challenge to the sufficiency of the evidence in Pitts’s direct appeal, this court summarized the evidence presented at trial as follows: |g[T]he State’s proof established Pitts’s motive for murdering Dr. Jones and his various threats to do so. Mrs. Jones’s statements to the police and her testimony at the trial had minor inconsistencies, but there was no variance so great as to weaken her positive identification of Pitts as the intruder in her home.[1] The FBI testimony about the hair definitely puts Pitts in contact with Dr. Jones. Pitts left the Jones house in [Dr. Jones’s] Land Cruiser with Dr. Jones and the stolen articles. The body and articles were in the vehicle the next morning. Mrs. Stanley’s timing of the arrival of the Land Cruiser was contradicted by Mark Musgrave and his mother. Only about three hours after the murder Pitts was unable to account for his earlier whereabouts. Pitts, 273 Ark. at 226, 617 S.W.2d at 852. It also summarized Malone’s testimony: Dr. Jones’s clothing was sent to the FBI laboratory for examination. An expert witness, Mike Malone, testified that he found several Caucasian hairs and a brown Negroid hair on the clothing. The Negroid hair, when examined with a microscope, had 20 different characteristics. Sample specimens of Pitts’s hair had exactly the same 20 characteristics. Malone testified that as part of a test to qualify as an FBI examiner he was given 50 hairs from 50 different persons. He was also given another 50 hairs from the same persons, but they were all mixed up. He passed the test by matching all 50 pairs correctly, with no mistakes. He said that in his nine years’ experience the only way he had seen hairs match the way they did in this instance was when in fact they came from the same person. He testified that his identification was not absolutely positive, like a fingerprint. The jury, however, could certainly have relied upon it in returning a verdict of guilty. Id. at 224-25, 617 S.W.2d at 851-52. Following his conviction and direct appeal, Pitts vigorously pursued his state and federal court remedies but failed to get relief.[2] Pitts’s last effort was in 2011, when he filed |3a habeas petition pursuant to Arkansas Code Annotated section 16—112— 201 et seq., alleging actual innocence. Pursuant to the statute, DNA testing was performed on the only hair with a follicle collected from the crime scene and the victim’s body. The nuclear DNA test that was performed was inconclusive. Pitts moved to have mitochondrial DNA testing performed on other hairs, but that request was denied by the circuit court, and this court affirmed. Pitts v. State, 2011 Ark. 322, 2011 WL 3930396 (per curiam). The sample that was selected for mitochondrial DNA testing was lost during the time that Pitts appealed the circuit court’s denial of his request for additional testing, and. it has yet to be found. Meanwhile, in 1996, the FBI responded to allegations of improper practices by certain FBI laboratory technicians by forming a task force to ensure that no criminal defendant’s right to a fair trial had been compromised. After reviewing Pitts’s case, the task force determined that Pitts’s trial had been tainted by Malone’s testimony. In 2014, the DOJ sent letters to Pitts, the prosecuting attorney, the public defender, and the Innocence Project informing the recipients that Malone was one of thirteen examiners whose work in hair analysis failed to meet professional standards. In a letter dated February 4, 2016, the DOJ advised the prosecuting attorney of the Sixth Judicial District that “we have determined that a report or testimony regarding the microscopic hair comparison-analysis containing erroneous statements was used in this ease.... We ask that you determine the actions your office should take in light of this error.” Pitts received- a copy of this letter from the DOJ in a letter dated April 2, 2015. The DOJ and the FBI review concluded that there were three types of errors in Malone’s testimony: |4(1) [T]he examiner stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others—this type of testimony exceeded the limits of the science; (2) the examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association—this type of testimony exceeded the limits of the science; or (3) the examiner cites the number of cases or hair analyses worked in the laboratory and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that a hair belongs to a specific individual—this type of testimony exceeded the limits of the science. The prosecutor from the Sixth Judicial District conceded that Malone’s work was material to Pitts’s conviction. As noted previously, Pitts has asserted in his petition that this court could grant him postconviction relief in accordance with several different legal modalities. For the reasons stated in Strawhacker v. State, 2016 Ark. 348, 500 S.W.3d 716, we reinvest jurisdiction in the trial court and grant Pitts permission to seek relief via a writ of error coram nobis. As we stated in Strawhaeker, “The function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment.... The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature.” The writ is available to “fill a gap in the legal system—to provide relief that was not available at trial because a fact exists which was not known at that time and relief is not available on appeal because it is not in the record.” Id. at 719 (citing Penn v. State, 282 Ark. 71, 670 S.W.2d 426 (1984)). Petition granted'. Danielson and Goodson, JJ., concur in part and dissent in part. . Although the intrader wore a mask, Mrs. Jones identified him as Pitts, whom she had known for several years. . Pitts v. State, CR-80-40 (Ark. Feb. 1, 1982) (unpublished per curiam) (Rule 37 relief denied); Pitts v. Lockhart, 753 F.2d 689 (8th Cir. 1985) (first federal habeas petition denied); Pitts v. Lockhart, 911 F.2d 109 (8th Cir. 1990) (second federal habeas petition denied); Pitts v. Norris, 85 F.3d 348 (8th Cir. 1996) (third federal habeas petition denied); Pitts v. State, 336 Ark. 580, 986 S.W.2d 407 (1999) (petition to proceed with a writ of error coram nobis denied); Pitts v. State, CR-80-40 (Ark. May 18, 2000).