Cite as 2020 Ark. 7

# SUPREME COURT OF ARKANSAS

**No.** CR–18–272

| | |
|---|---|
| EUGENE ISSAC PITTS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** January 9, 2020<br><br>PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-79-471]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

This is an appeal from the trial court's denial of appellant Eugene Issac Pitts's petition for writ of error coram nobis that he filed after this court gave Pitts permission to proceed with that petition in *Pitts v. State*, 2016 Ark. 345, 501 S.W.3d 803 (*Pitts II*). Pitts's arguments on appeal turn on his claims that the trial court failed to conduct a proper analysis when it did not treat the admission of certain evidence as structural error and failed to apply the law-of-the-case doctrine. The error here was not structural, and the trial court's analysis was correct. Pitts failed to show an abuse of discretion, and we affirm.

## I. *Background*

Pitts was convicted of capital felony murder in 1979 for killing Dr. Bernard Jones in the course of kidnapping the North Little Rock veterinarian, and this court affirmed the judgment. *Pitts v. State*, 273 Ark. 220, 617 S.W.2d 849 (1981) (*Pitts I*). *Pitts II* concerned testimony of FBI agent Michael Malone on microscopic hair-comparison analysis. The

Department of Justice (DOJ) repudiated Malone's testimony, concluding aspects of Malone's testimony at Pitts's trial exceeded the limits of science by overstating the probative value of hair-comparison analysis. 2016 Ark. 345, at 3–4, 501 S.W.3d at 805.

This court gave leave to proceed in *Pitts II*, referencing a companion case, *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716, for its reasoning. Appointed counsel representing Pitts filed the error coram nobis petition in the trial court alleging a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that without Malone's testimony, there was a reasonable probability that Pitts would have been acquitted on the basis of the strengthened proposition of an alternative, white suspect. In the hearing on the petition, Pitts, representing himself, presented no evidence, instead asserting what he contended was the correct method of analysis and the applicable standard to be applied.

In its order, the trial court first determined that no *Brady* violation had occurred; then, after specifically referencing an instruction in *Strawhacker* to consider whether the writ should be granted under the rule of reason or to prevent a miscarriage of justice, it declined to issue the writ. The trial court found that Pitts had not demonstrated that Malone's testimony was material or, even if the testimony was material, that Pitts had met his burden of showing a reasonable probability that, had the DOJ's repudiation been disclosed to the defense, the result of the proceeding would have been different. Referencing Pitts's brief, the trial court also stated that it was not convinced that there was a reasonable probability "on what remains" that Pitts would have been acquitted.

## II. *Standard of Review*

The standard of review for an order on a petition for writ of error coram nobis is abuse of discretion in granting or denying the writ. *Osburn v. State*, 2018 Ark. 341, 560 S.W.3d 774. An abuse of discretion occurs when the trial court acts arbitrarily or groundlessly. *Id.* In reinvesting the circuit court with jurisdiction to consider claims for issuance of the writ, this court tasks the circuit court with resolving factual disputes, and when it acts as a fact-finder, the circuit court determines the credibility of witnesses, resolves conflicts and inconsistencies in testimony, and assesses the weight to be given the evidence. *Isom v. State*, 2018 Ark. 368, 563 S.W.3d 533. This court reviews the trial court's factual findings for clear error. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*

## III. *Basis for the Writ*

The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Foreman v. State*, 2018 Ark. 330. The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the

3

crime during the time between conviction and appeal. *Id.* Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.*

IV. *Arguments on Appeal*

Pitts raises four points on appeal. The first two points, in contrast to Pitts's last two points, challenge the trial court's findings and are intertwined. In his first point, Pitts appears to take the position that the order did not reflect that the trial court conducted the full analysis required by this court, alleging (1) that the test outlined in *Strawhacker* meant that no harmless-error analysis could be employed; (2) that the correct test was one for structural error in which the only question was whether the repudiated testimony had been admitted and, if so, then there was sufficient prejudice to require issuance of the writ; (3) that he was not required to demonstrate a reasonable probability of acquittal; and (4) that the trial court was obligated to follow certain previous decisions to determine prejudice.

In his second point, Pitts contends that the trial court erred in finding that he had not met his burden of demonstrating a reasonable probability that the false testimony had undermined confidence in the outcome of the trial. He alleges this error occurred because the law-of-the-case doctrine applied to control the trial court's findings on materiality of the evidence. Pitts reiterated his previous claims, including that the error was structural, and averred that the repudiated testimony should be treated as incompetent testimony because the DOJ had indicated the statements should be treated as false evidence with knowledge of the false evidence imputed to the prosecution.

4

In his third and fourth points on appeal, Pitts asserts diligence and asks this court to issue the writ directly without remand. Because Pitts fails to demonstrate an abuse of discretion or error in denial of the writ, we need not consider those points.

## V. *The Trial Court's Analysis*

In *Strawhacker*, this court stated that even if the claims in the petition did not fall neatly within one of the four recognized categories of error, the writ may be used to fill a procedural gap if, under the unique circumstances at hand, the rule of reason calls for a grant of the writ to prevent a miscarriage of justice. 2016 Ark. 348, at 6–7, 500 S.W.3d at 719–20. This court instructed the trial court that if it found the repudiated testimony was material, it should grant the writ. 2016 Ark. 348, at 7, 500 S.W.3d at 720. It explained that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* In other words, had it been known that the hair-comparison testimony was erroneous, there was a reasonable probability that the result would have been different. *Id.* Although his argument is not always clear, Pitts appears to assert that the court did not follow these instructions and failed to conduct a rule-of-reason analysis.[1]

A *Brady* violation is one type of error that may provide a basis for coram nobis relief, falling within the third category of error as withheld evidence. *See Scott v. State*, 2019 Ark. 94, 571 S.W.3d 451. Pitts does not contest the trial court's conclusion that there was no

---

[1]The State characterizes the issue as a new argument, and it asserts that Pitts did not raise a rule-of-reason argument below. While Pitts did not use the term "rule of reason" in his arguments below, he did indicate that the case failed to fall neatly within one of the four categories, and the grant of the writ should be based on a more general denial of due process. Pitts's arguments on appeal generally track the arguments he made to the trial court.

*Brady* violation, and his argument on appeal appears to be that the trial court's further analysis, after it concluded that the error does not fall within one of the four categories, was not correct. The trial court specifically referenced a rule-of-reason analysis, however, and all of Pitts's arguments that the trial court's analysis was improper hinge on the allegations that it failed to treat the error as structural error or to adopt previous holdings in the analysis.

The trial court correctly understood our instructions in *Strawhacker* to apply an analysis similar to that used for a *Brady* violation, although the circumstances here prevented the defect from falling within that category. *See, e.g.*, *Jones v. State*, 2017 Ark. 334, 531 S.W.3d 384. As the trial court found, evidence of the repudiation would have been favorable to the defense because, as Pitts asserts, the repudiated evidence came from an FBI agent and carried the weight of that office's credibility.

Application of the rule of reason to fill a procedural gap does not, however, expand the other restrictions on granting the writ. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). Pitts was required to demonstrate that the repudiation by the DOJ was a fact that would have prevented rendition of the judgment if it had been known at trial and that, as a consequence, the evidence was material. Although Pitts asserts that he was not required to demonstrate a reasonable probability of acquittal, he was required to demonstrate a reasonable probability that, had the DOJ's repudiation been disclosed to the defense, the result of the proceeding would have been different.

Other courts have examined this issue and adopted standards under which the petitioner seeking relief must demonstrate that without the error, the jury would have had some basis for reasonable doubt. *See, e.g.*, *Florida v. Murray*, 262 So. 3d 26 (Fla. 2018). Pitts

6

did not contend that the evidence of the DOJ's repudiation would have led to any additional evidence to support his theory of the case. If the defense had known of the repudiation, it likely would have successfully contested admission of that evidence. The trial court correctly examined the impact of the repudiated evidence and whether, considering the evidence introduced at trial other than what was later repudiated, there was a reasonable probability of a different outcome—that is, an acquittal. This inquiry produces the same result as the inquiries articulated in *Strawhacker* because the question is essentially whether the trial was fundamentally unfair.

## VI. *Structural Error*

Pitts contends that he was entitled to a presumption of prejudice for the admission of Malone's testimony because the damage was difficult to estimate and therefore the error was a structural one. Structural error is error that is so fundamental as to render the judgment of conviction void and subject to collateral attack. *Reams v. State*, 2018 Ark. 324, 560 S.W.3d 441. Under the analysis in *Reams*, even when error is deemed structural in nature, the error does not necessarily lead to a fundamentally unfair trial. *Id*. In regard to prejudice, a defendant in postconviction proceedings must nevertheless demonstrate either a reasonable probability of a different outcome in their case or that the structural error was so serious as to render their trial fundamentally unfair. *Id*. Only the most serious error eliminates the need to inquire whether the error was sufficient to affect the outcome of the trial because the very existence of the error undermines the confidence in the fundamental fairness of the outcome. *Id*.

7

It may be that the damage is somewhat difficult to estimate for an error that qualifies as a *Brady* violation, and that issue is addressed by the requirement that the evidence be material. The level of prejudice required to support a finding of a *Brady* violation calls for an adverse impact upon the fundamental fairness of the trial. *Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219 (2000). The similar analysis the trial court used here is therefore appropriate.

Pitts would distinguish his case by citing a number of cases for the proposition that incompetent testimony must be presumed prejudicial. *Queary v. State*, 259 Ark. 123, 531 S.W.2d 485 (1976), is typical of these. *Queary* holds that in criminal cases, when there is no affirmative showing to the contrary, this court must presume that incompetent testimony was prejudicial to the accused. 259 Ark. at 124, 531 S.W.2d at 486. Even if Malone's testimony was incompetent, the holding in *Queary* does not stand for the proposition that this type of claim must be treated as the serious structural error that Pitts alleges.

In *Queary*, this court adopted a presumption that shifted the burden on direct appeal but nevertheless left open the possibility that the trial may have been fair despite the error. In postconviction proceedings such as this—where there is a strong presumption that the judgment of conviction is valid—the materiality analysis employed was correct. Pitts fails to demonstrate that this is a situation when the very existence of the error undermines the confidence in the fundamental fairness of the outcome.

## VII. *Law of the Case/Res Judicata*

The law-of-the-case doctrine prohibits a court from reconsidering issues of law or fact that have already been decided on appeal and serves to effectuate efficiency and finality in the judicial process to avoid reconsideration of matters once decided. *Schnarr v. State*,

2018 Ark. 333, 561 S.W.3d 308. Under the law-of-the-case doctrine, the decision of an appellate court establishes the law of the case for the trial court upon remand and for the appellate court itself upon subsequent review. *Harmon v. State*, 2019 Ark. 34. Similarly, an issue-preclusion analysis under res judicata is used in postconviction proceedings, and under that analysis, a decision by a court of competent jurisdiction on matters that were at issue and that were directly and necessarily adjudicated, bars any further litigation by the plaintiff or his privies against the defendant or his privies on the same issues. *Mason v. State*, 361 Ark. 357, 206 S.W.3d 869 (2005); *see also Anderson v. Kelley*, 2018 Ark. 222, 549 S.W.3d 913 (noting that abuse-of-the-writ doctrine may apply in habeas proceedings to subsume res judicata). The person who seeks the benefit of issue preclusion bears the burden of showing that (1) the issue sought to be precluded is the same as that involved in the prior litigation; (2) the issue was actually litigated; (3) the issue was determined by a final and valid judgment; and (4) the determination was essential to the judgment. *Mason*, 361 Ark. 357, 206 S.W.3d 869. Pitts does not show that the issue resolved was the same as that presented here.

Pitts asserts that this court's sufficiency-of-the-evidence analysis on direct appeal was controlling. In reviewing a sufficiency challenge, this court views the evidence in the light most favorable to the State, considering only evidence that supports the verdict. *Arnold v. State*, 2018 Ark. 343, 561 S.W.3d 727. In a *Brady* analysis, the court must weigh the significance of the information that was concealed against the totality of the evidence, and it seems axiomatic that the similar analysis here, in which the trial court was to determine

9

whether the trial was fundamentally fair, the entirety of the evidence before the jury during the trial was to be considered. The issues here are not the same as on direct appeal.

VIII. *Impact of the Repudiated Evidence*

Without a presumption of prejudice or a prior holding on materiality, Pitts's claim that the trial court erred in finding that he had not met his burden of demonstrating a reasonable probability that the false testimony had undermined confidence in the outcome of the trial also fails. After Malone's testimony portrayed a definitive connection between Pitts and the victim, counsel brought out on cross-examination that Malone had admitted in his report that there were limitations on the strength of that connection in that the analysis could not be used as the basis for identification or even to simply determine gender.

Pitts also characterizes Malone's testimony as the sole corroborating evidence for identification of Pitts as the kidnapper by Benita Jones, the victim's widow. The trial court, however, noted other evidence that supported Pitts's identification. Instead of the physical evidence from the crime scene, the lynchpin for the State's case against Pitts and the evidence that most strongly supported Benita's identification of Pitts as the kidnapper—and, indeed, her entire story of the events of that night—was the evidence of Pitts's obsession with Benita and Pitts's fixation with the idea of eliminating Dr. Jones as an impediment to Benita "belonging" to Pitts.

The trial court referred to this evidence, including a receipt found in Pitts's home that was for roses sent to Benita on Valentine's Day and testimony from a handwriting expert about the high probability that Pitts had addressed a package that contained a bullet with Dr. Jones's name etched on it that was sent to Dr. Jones at the same time. Malone's

10

testimony had no impact on the facts surrounding Pitts's obsessive stalking of Benita, which was key to motive and the jury's satisfaction that Benita was credible.

During the trial, the defense challenged the physical evidence linking Pitts to the crime scene, including both hair and soil samples, and introduced evidence intended to show that Benita was not happy in her marriage. The defense highlighted numerous discrepancies in Benita's testimony, focusing on aspects of her story as either physically impossible or highly unlikely to have occurred (she testified that she managed to leave her home still bound hand and foot, cross her backyard and a neighbor's, and negotiate opening––with her face—both a sliding patio door and a gate in the fence between the yards), and yet the jury found her testimony credible. Pitts argues that the jury found Benita's testimony credible only because Malone linked Pitts to the murder scene. On the contrary, it seems that Benita's testimony was so compelling that it not only resolved concerns about the physical evidence, it also overcame reservations about her escape story and addressed questions that the defense raised about the state of her relationship with her husband. There was no clear error in the trial court's finding that the repudiated evidence was not material, and Pitts has not shown an abuse of discretion in the denial of the writ.

Affirmed.

HART, WOOD, and WYNNE, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** In *Pitts v. State*, 2016 Ark. 345, 501 S.W.3d 803 (*Pitts II*), this court gave Pitts permission to proceed in circuit court to seek a writ of error coram nobis. This court explained via a companion case that "if the circuit

11

court concludes that the repudiated expert's testimony was material, [petitioner] is entitled to relief." *Strawhacker v. State*, 2016 Ark. 348, at 7, 500 S.W.3d 716, 720.

I struggle to comprehend how the circuit court, and now our court on review, concluded that FBI agent Mike Malone's testimony was immaterial. In 2002, the circuit court granted habeas relief and ordered DNA testing. It found that the hair that was the subject of agent Malone's testimony met the statutory relevancy requirement. If potentially exculpatory evidence regarding the hair was materially relevant in 2002, why is erroneous inculpatory evidence from a discredited expert regarding the same hair immaterial now?[1] In Pitts's direct appeal, the majority relied on two pieces of evidence to uphold the sufficiency of the evidence: (1) the testimony from the victim's wife and (2) the testimony from agent Malone. *Pitts v. State*, 273 Ark. 220, 226, 617 S.W.2d 849, 852 (1981) ("The FBI testimony about the hair definitely puts Pitts in contact with [the victim]."). One cannot ignore that two separate witnesses saw Caucasian men at the victim's vehicle near the time of death. *Id*. But their testimony was surpassed by agent Malone's. He maintained that Pitts's Negroid hair was almost certainly located on the victim, a fact we now know was erroneous. *Pitts II*, 2016 Ark. 345, at 3–5, 501 S.W.3d at 805.

Agent Malone presented the jury with erroneous inculpatory evidence scientifically linking Pitts to the crime. He was qualified as an expert. It is well established that a jury places heightened weight on scientific evidence from an expert witness. *See Fukunaga v.*

---

[1]The majority opinion in *Pitts II* states that even the prosecutor conceded to the Department of Justice that the testimony was material to Pitts's conviction, a fact this writer could not independently substantiate. But if true, this fact even more undermines the outcome in this case. *See Pitts II*, 2016 Ark. 345, at 4, 501 S.W.3d at 805.

*State*, 2016 Ark. 164, at 4, 489 S.W.3d 644, 646–47 (citing *United States v. Rosales*, 19 F.3d 763, 766 (1st Cir. 1994)). To find that the FBI agent's fabricated scientific testimony was not prejudicial and nothing more than a harmless error is staggering. I would reverse and remand for entry of an order granting Pitts a new trial.

HART and WYNNE, JJ., join.

*Eugene Issac Pitts*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.