Cite as 2022 Ark. 134

# SUPREME COURT OF ARKANSAS
No. CR–21–623

| | |
|---|---|
| | **Opinion Delivered:** June 16, 2022 |
| LONNIE DOLPHUS STRAWHACKER<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR–89–760]<br><br>HONORABLE MARK LINDSAY, JUDGE<br><br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Lonnie Strawhacker appeals the Washington County Circuit Court's order denying his petition for writ of error coram nobis and his petition for writ of habeas corpus. For reversal, Strawhacker argues that this court should (1) adopt "the tentative expansion" of the writ of error coram nobis advanced in *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716, and (2) hold that the circuit court abused its discretion in denying coram nobis relief. We affirm.

## I. *Facts*

This court provided a lengthy recitation of the facts in Strawhacker's direct appeal, *Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991), and in *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716 (granting his petition to reinvest jurisdiction with the circuit court to consider whether to grant coram nobis relief). The relevant facts are as follows. In the late evening of August 11, 1989, the female victim had visited two nightclubs, was

intoxicated, and attempted to find her car. She was struck from behind and pushed into a ditch. A man put his hand over her mouth, attempted to choke her, and struck her several times in her face, head, and abdomen. He asked her to take off her clothes, and when she could not, he continued beating her. She was bleeding from her mouth and her nose, and her eyes were beginning to swell shut. The victim was raped by her attacker, and she estimated that the attacker stayed with her in the ditch for approximately five hours. Because it was dark and her eyes were swollen shut, she could not see her attacker's face. She and the attacker went to the victim's mobile home in a trailer park. Because she was in considerable pain, she got into bed and drifted into and out of consciousness. The attacker got into bed with her and was gone the next morning. The victim went to a neighbor's house to seek help and was taken to a hospital. Subsequently, the police developed Strawhacker as a suspect and conducted a voice-identification lineup. During the voice lineup, the victim identified Strawhacker's voice as that of her assailant.

At trial, the State presented numerous witnesses, including the victim. Among the State's witnesses, FBI supervisory special agent Michael Malone was admitted as an expert in the field of hair and fibers. During his nineteen-year tenure at the FBI, Malone had received training in hair and fiber analysis, worked on over 3500 cases, and testified as an expert over 350 times. Malone testified that he had examined the pubic hairs recovered from Strawhacker's jeans and the victim's bed sheets. Malone testified that the pubic hair found on Strawhacker's jeans was "absolutely indistinguishable" from the victim's pubic-hair sample. Malone further testified that the pubic hair found on the victim's bed was "absolutely indistinguishable" and "consistent with [the hair sample] coming from Mr.

Strawhacker." Malone claimed that it would be "highly unlikely" that the pubic hair came from anyone other than the victim and that the probability of a false identification was one in five thousand. Additionally, Malone was called as the defense's only witness and testified that he had not performed any testing on latent fingerprints or blood found on a hair sample. After deliberations, the jury convicted Strawhacker of rape and first-degree battery, and he received a life sentence for rape and thirty years' imprisonment for first-degree battery.

Strawhacker appealed the jury's convictions and sentences and did not challenge the sufficiency of the evidence. We affirmed on direct appeal in *Strawhacker*, 304 Ark. 726, 804 S.W.2d 720 (acknowledging that the rape victim had testified at trial and affirming four points, including the admissibility of photographs of the victim's injuries and the victim's identification of Strawhacker in a voice lineup). Strawhacker filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 36.4 (1990), which the circuit court denied. We affirmed the circuit court's order in *Strawhacker v. State*, CR–00–1417 (Ark. Jan. 24, 2002) (unpublished per curiam).

In 1996, the Department of Justice established a task force to review the performance of its FBI laboratory examiners in cases involving microscopic hair-comparison analysis. In September 2014, the Department sent a letter informing the Washington County Prosecuting Attorney that Malone's "testimony regarding microscopic hair comparison analysis contain[ed] erroneous statements." The Department further stated that Malone had "exceeded the limits of science" by stating that "the evidentiary hair could be associated with a single person to the exclusion of all others," by "assign[ing] to the positive association a statistical weight or probability . . . that the questioned hair originated from a particular

3

source," and by citing his experience in the laboratory making positive hair identifications. The Department further stated that it "took no position regarding the materiality of the error in this case." In a letter dated October 17, 2014, the Department notified Strawhacker that Malone's testimony "may have failed to meet professional standards." The letter stated that "[t]he prosecutor . . . has advised the Department of Justice that Michael Malone's work was material to your conviction[.]" Because of the Department's disclosure, Strawhacker filed in this court a pro se petition for leave to proceed in the circuit court with a petition for writ of error coram nobis. In *Strawhacker*, 2016 Ark. 348, at 5–6, 500 S.W.3d at 719, we granted his petition to reinvest jurisdiction with the circuit court.

On December 19, 2016, Strawhacker filed a petition for writ of error coram nobis in the circuit court. He also filed a petition for writ of habeas corpus and a motion for access to evidence for testing. After much delay, the hair evidence was retrieved and sent to the Arkansas State Crime Laboratory, but the lab was not able to obtain a DNA profile. At a hearing on October 11, 2021, it was stipulated that the lab could not obtain a DNA profile. At the conclusion of the hearing, the circuit court made the following rulings from the bench:

> The Court has considered the pleadings filed by both the State and the defense, argument[s] of counsel today, and the record from the original trial, as well as the other two stipulated documents, which consisted of letters – Stipulated 3 consisted of letters from the Department of Justice and some court testimony. And then Stipulated 2 was the Crime Lab results.
>
> . . . .
>
> Now, again, you take out Mr. Malone's testimony. He was the only witness for the defense. As I know the lawyers know, in a rape case, the testimony alone of the victim, if believed by the jury, is sufficient to convict someone of rape. There was more than this in this case. She – while it's true she couldn't identify him by

4

sight, it is because her assailant beat her so bad that her eyes were swollen shut and she could not see. So she did do an I'm-sure identification of the voice and identified that voice as Mr. Strawhacker. She gave details of going back to her trailer, and when she woke up the next morning, he was gone. Mr. Fairchild, the next morning, testifies he finds Mr. Strawhacker right there outside the trailer park, and he looked like heck. I won't go over the description again, but he asked him, What happened? He goes, Oh, I got in a fight, but I don't remember with who. So in any event, then you have, again, Mr. – now, Mr. Krogman [Strawhacker's co-worker] – I'm sorry – is the one who picked [Strawhacker] up and took him to Springdale. In any event, then you have Mr. Fairchild [nightclub assistant manager of security] and his time frame as to when Mr. Strawhacker was last seen in a clean set of clothes and not bloody and scratched up and grassy and things of that nature.

The Court finds taking out the testimony of Mr. Malone does not in any way affect the testimony that was put on by the State's witnesses. The State's witnesses were not impeached to any great degree. Mr. Malone or Agent Malone, on the other ha[n]d, was at least impeached. He had to admit that, well, [the hair evidence] is not as good as a fingerprint and I can't say for sure that this is his and that it couldn't be someone else's. So Agent Malone was probably impeached – in my opinion, he was impeached more than any other witness. So I find that if you take him totally out of it, that even with him in it, the jury had impeachment evidence to consider. If you take him totally out of it, there was nothing, not another witness or any type of impeachment of the State's case.

And so the Court finds that Mr. Strawhacker has failed to meet his burden of proof that there is a reasonable possibility that the result would have been different, in other words, that there would have been an acquittal if the FBI or the Department of Justice's repudiation that came out 24 years later had come out before the trial.

That will be the order of the Court.

On October 13, 2021, the circuit court memorialized its bench rulings in an order denying Strawhacker's petition for writ of error coram nobis. Strawhacker now appeals the circuit court's denial and concedes that the inability to obtain new scientific evidence from the hairs at issue moots his habeas petition.

II. *Expansion of the Writ of Error Coram Nobis*

For his first point on appeal, Strawhacker argues that this court tentatively adopted an expansion of the writ of error coram nobis in *Strawhacker*, 2016 Ark. 348, 500 S.W.3d

5

716. Specifically, Strawhacker contends that "as a threshold matter, this Court should formally recognize as a fifth ground for error coram nobis the repudiation—either directly by the propounding agency or by a substantial scientific consensus—of scientific testimony." The State responds that because this court "has already expanded the writ of error coram nobis as Strawhacker requests, his first point on appeal is moot."

This court expanded the writ of error coram nobis to include the rare circumstance of repudiated scientific testimony presented by an expert on behalf of the government. *See Pitts v. State*, 2020 Ark. 7, at 6–12, 591 S.W.3d 786, 791–94 (holding that the circuit court properly found that Malone's repudiated hair evidence was not material and that Pitts had not shown an abuse of discretion in the denial of the writ); *Strawhacker*, 2016 Ark. 348, at 7–8, 500 S.W.3d at 720 (granting Strawhacker's petition to reinvest jurisdiction with the circuit court and expanding on the rule of reason, materiality of Malone's testimony, and the reasonable-probability standard); *Pitts v. State*, 2016 Ark. 345, at 4–5, 501 S.W.3d 803, 805–06 (granting Pitts's petition to reinvest jurisdiction to pursue a writ of error coram nobis "[f]or the reasons stated in" *Strawhacker*, 2016 Ark. 348, 500 S.W.3d 716). *See also Noble v. State*, 2022 Ark. 37, at 3, 638 S.W.3d 844, 846 (stating that this court has extended the writ of error coram nobis under "the rule of reason" when the State presented repudiated governmental "expert scientific opinion at trial"). Thus, because Strawhacker requests an expansion of the writ that already exists, we hold that his argument is moot.

III. *Denial of the Writ of Error Coram Nobis*

For his second point on appeal, Strawhacker argues that the circuit court abused its discretion in denying his petition for writ of error coram nobis and requests that this court

either reverse the lower court's denial of relief or remand the matter "for consideration under the proper standard." He asserts that, by applying an incorrect legal standard for coram nobis relief, the circuit court made two structural errors—(1) it "grossly misstated the appropriate test," and "the [actual] test is the more forgiving 'reasonable probability of a different outcome'"; and (2) it abused its discretion in its materiality analysis by omitting Malone's testimony.

Relying on *Pitts*, 2020 Ark. 7, 591 S.W.3d 786, and *Strawhacker*, 2016 Ark. 348, 500 S.W.3d 716, the State responds that (1) the circuit court used the correct legal standard in denying coram nobis relief and (2) the circuit court's denial of coram nobis relief was not an abuse of discretion. We discuss the arguments in tandem.

A. Writ of Error Coram Nobis

Our standard of review of an order entered by the circuit court on a petition for writ of error coram nobis is whether the circuit court abused its discretion in granting or denying the writ. *Davis v. State*, 2018 Ark. 290, at 4, 558 S.W.3d 366, 368. An abuse of discretion occurs when the court acts arbitrarily or groundlessly. *Id.*, 558 S.W.3d at 369. The circuit court's findings of fact, on which it bases its decision to grant or deny the petition for writ of error coram nobis, will not be reversed on appeal unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.*, 558 S.W.3d at 369. There is no abuse of discretion in the denial of error coram nobis relief when the claims in the petition are groundless. *Id.*, 558 S.W.3d at 369.

The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial

court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Ramirez v. State*, 2018 Ark. 32, at 3, 536 S.W.3d 614, 616. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.*, 536 S.W.3d at 616. A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third–party confession to the crime during the time between conviction and appeal. *Id.*, 536 S.W.3d at 616. The writ is available to fill a gap in the legal system—to provide relief that was not available at trial because a fact exists that was not known at that time, and relief is not available on appeal because it is not in the record. *Penn v. State*, 282 Ark. 571, 573–74, 670 S.W.2d 426, 428 (1984).[1]

## B. Expanding the Writ of Error Coram Nobis

We previously noted that this court expanded the writ of error coram nobis to include the rare circumstance of repudiated scientific testimony presented by an expert on behalf of the government. In *Noble*, 2022 Ark. 37, at 3, 638 S.W.3d at 846, we explained that, in considering a writ of error coram nobis, we have utilized the "rule of reason" in the narrow circumstances

> where (1) the State presented expert scientific opinion at trial; (2) the expert was an agent of the government; and (3) that same government later repudiates the expert's scientific opinion.

---

[1]The parties do not dispute the circuit court's findings that Strawhacker had not met his burden of proving that he was entitled to relief under one of the four enumerated categories of the writ. The State had not withheld evidence at the time of trial because Malone's testimony was not called into question until 2014 when the Department notified the parties.

Notably, in *Strawhacker*, 2016 Ark. 348, 500 S.W.3d 716, we granted Strawhacker's petition to reinvest jurisdiction with the circuit court and stated,

> We hold that Strawhacker has stated sufficient grounds for us to find that his writ may be meritorious and therefore we grant his petition. . . . Now the Department of Justice has put in writing that Malone's analysis was flawed and that his conclusions exceeded the limits of science. In addition, the Department alleged that the prosecutor found Malone's testimony "material" to the verdict. Because Malone was an expert, proffered by the government, the subsequent repudiation of his testimony by the government raises serious concerns due to the "aura of special reliability and trustworthiness" of expert testimony. *Cf. Fukunaga v. State*, 2016 Ark. 164, at 4, 489 S.W.3d 644, 646–47 (citing *United States v. Rosales*, 19 F.3d 763, 766 (1st Cir. 1994)). This is sufficient for us to determine he met his burden to reinvest jurisdiction in the trial court.

*Id*. at 5–6, 500 S.W.3d at 719.

We clarified our *Strawhacker* holding in *Pitts*, 2020 Ark. 7, at 5, 591 S.W.3d at 790–91, by stating:

> In *Strawhacker*, this court stated that even if the claims in the petition did not fall neatly within one of the four recognized categories of error, the writ may be used to fill a procedural gap if, under the unique circumstances at hand, the rule of reason calls for a grant of the writ to prevent a miscarriage of justice. 2016 Ark. 348, at 6–7, 500 S.W.3d at 719–20. This court instructed the trial court that *if it found the repudiated testimony was material, it should grant the writ*. 2016 Ark. 348, at 7, 500 S.W.3d at 720. It explained that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. In other words, *had it been known that the hair-comparison testimony was erroneous, there was a reasonable probability that the result would have been different. Id.*

(Emphasis added.) We further opined:

> Application of the rule of reason to fill a procedural gap does not, however, expand the other restrictions on granting the writ. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). *Pitts was required to demonstrate that the repudiation by the DOJ was a fact that would have prevented rendition of the judgment if it had been known at trial and that, as a consequence, the evidence was material.* Although Pitts asserts that he was not required to demonstrate a reasonable probability of acquittal, *he was required to demonstrate a reasonable probability that, had the DOJ's repudiation been disclosed to the defense, the result of the proceeding would have been different.*

. . . .

*The trial court correctly examined the impact of the repudiated evidence and whether, considering the evidence introduced at trial other than what was later repudiated, there was a reasonable probability of a different outcome—that is, an acquittal.* This inquiry produces the same result as the inquiries articulated in *Strawhacker* because the question is essentially whether the trial was fundamentally unfair.

*Id.* at 6–7, 591 S.W.3d at 791–92 (emphasis added). Ultimately, we held that "[t]here was no clear error in the trial court's finding that the repudiated evidence [Malone's testimony concerning hair-comparison analysis] was not material, and Pitts ha[d] not shown an abuse of discretion in the denial of the writ." *Id.* at 12, 591 S.W.3d at 794.

### C. Analysis

With this precedent in mind, we turn to the case at bar. The circuit court made the following findings in denying coram nobis relief:

8. As it pertains to the "Rule of Reason," the Court finds that had this information been known to the Defendant at the time of trial, the testimony of Agent Malone would not have been allowed.

9. Based on the remaining evidence after removing the aforementioned tainted evidence, the Court finds that Agent Malone's testimony was not material to the State's case. The repudiation of the testimony would not have led to additional evidence for the Defendant to present. Furthermore, without the testimony, there remained sufficient evidence to support the jury's finding of guilt.

10. Therefore, the Defendant has failed to demonstrate that [the] outcome of the proceeding would have been different. He has failed to show that the repudiation of the evidence would have prevented the rendition of the judgment in this case, that being a guilty verdict.

We agree with the circuit court's rulings in the unique circumstances of this case. First, under the factors articulated in *Noble*, 2022 Ark. 37, at 3, 638 S.W.3d at 846, (1) the State presented Malone's scientific testimony on hair evidence at trial; (2) Malone, an FBI supervisory special agent, acted as a governmental agent and was admitted as an expert in

10

the field of hair and fibers; and (3) the Department later repudiated the entirety of Malone's testimony. Here, in the circuit court's "rule of reason" finding in paragraph 8, the circuit court properly ruled that, had Malone's repudiated evidence been known at the time of trial, it "would not have been allowed." Thus, we conclude that the circuit court did not abuse its discretion in this specific ruling.

Next, in *Pitts*, "Pitts was required to demonstrate that the repudiation by the DOJ was a fact that would have prevented rendition of the judgment if it had been known at trial and that, as a consequence, the evidence was material." *Pitts*, 2020 Ark. 7, at 6–7, 591 S.W.3d at 791. Here, in its materiality ruling in paragraph 9, the circuit court properly removed Malone's "tainted evidence" from its analysis and found that Malone's testimony was "not material" to the State's case because "there remained sufficient evidence" to convict Strawhacker. Significantly, in its bench ruling at the hearing, the circuit court discussed at length the material evidence, such as the rape victim's testimony and her identification of Strawhacker in a voice lineup, that was sufficient, without Malone's testimony, to support Strawhacker's conviction and properly memorialized that finding in its order.[2] Therefore, we cannot say that the circuit court abused its discretion in its materiality ruling.

---

[2]While Strawhacker did not challenge the sufficiency of the evidence in his direct appeal, we have consistently held that the uncorroborated testimony of the victim alone is sufficient to support a rape or sexual-assault conviction. *Caple v. State*, 2020 Ark. 340, at 6, 609 S.W.3d 630, 634. Additionally, in *Strawhacker*, 304 Ark. at 731–32, 804 S.W.2d at 723–24, Strawhacker challenged the admissibility of the recording of the voice lineup during which the victim identified him as her assailant. We stated that "[t]he trial court listened to a tape recording of the lineup and not only admitted it but added, 'It appears to me to be an awfully clean lineup.'" *Id.* at 732, 804 S.W.2d at 724. We affirmed the circuit court's decision to admit the tape recording at trial. *Id.*, 804 S.W.2d at 724.

Last, under *Pitts*, the circuit court was required to determine "whether, considering the evidence introduced at trial other than what was later repudiated, there was a reasonable probability of a different outcome—that is, an acquittal." *Pitts*, 2020 Ark. 7, at 7, 591 S.W.3d at 792. At the hearing, the circuit court ruled from the bench that "Mr. Strawhacker has failed to meet his burden of proof that there is a reasonable probability that the result would have been different, in other words, that there would have been an acquittal if the FBI or the Department of Justice's repudiation that came out 24 years later had come out before the trial." Subsequently, in paragraph 10 of its order, the circuit court ruled that "[Strawhacker] has failed to demonstrate that [the] outcome of the [trial] would have been different" and that he "failed to show that the repudiation of the evidence would have prevented the rendition of the judgment in this case, that being a guilty verdict." Here, we agree with the circuit court that, in light of the evidence at trial other than Malone's repudiated testimony, Strawhacker failed to demonstrate that there was a reasonable probability of a different outcome—an acquittal. Thus, we conclude that the circuit court's

---

Further, in response to the dissents, the Department of Justice notified Strawhacker that Malone's work "was material to your conviction[,]" but this court also stated in *Strawhacker*, 2016 Ark. 348, at 4, 500 S.W.3d at 718, that the "Department said it would waive any statute-of-limitations or procedural-default defenses should a claimant file a petition for habeas corpus under 28 U.S.C. § 2255. The State has not made similar concessions." Significantly, in *Strawhacker*, 2016 Ark. 348, at 9–10, 500 S.W.3d at 721–22, "Strawhacker state[d] in his brief that he anticipate[d] seeking DNA testing of the hair at issue in his case. . . . Therefore, at the hearing on the writ, if the circuit court concludes that the repudiated expert's testimony was material, Strawhacker is entitled to relief." (Danielson, J., concurring in part, dissenting in part). Because a DNA profile could not be obtained below, the circuit court was left to determine the materiality of the evidence before it, and it found that "Agent Malone's testimony was not material to the State's case." Thus, for the foregoing reasons, we see no abuse of discretion by the circuit court.

ruling in paragraph 10 satisfies the reasonable-probability standard in *Pitts*, 2020 Ark. 7, at 7, 591 S.W.3d at 792, and we see no abuse of discretion.

Based on our standard of review, our coram nobis precedent, and the foregoing analysis, we cannot say that the circuit court abused its discretion in denying Strawhacker's petition for writ of error coram nobis. Accordingly, we affirm.

Affirmed.

WEBB, J., concurs.

HUDSON, WOOD, and WYNNE, JJ., dissent.

**BARBARA W. WEBB, Justice, concurring**. I agree that the circuit court's decision denying Lonnie Strawhacker error coram nobis relief should be affirmed. I write separately because it is inconsistent to declare that a point on appeal asking this court to expand the writ of error coram nobis "moot" because of "an expansion of the writ that already exists," and then go on to analyze the case in terms of the previously recognized "four categories." These "four categories" are: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. If there is indeed a fifth category, this court should so state instead of reflexively reiterating the boilerplate that was superseded by *Noble v. State*, 2022 Ark. 37, 638 S.W.3d 844; *Pitts v. State*, 2020 Ark. 7, 591 S.W.3d 786; *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716; and *Pitts v. State*, 2016 Ark. 345, 501 S.W.3d 803.

It is not helpful to list each time that a court has granted error coram nobis relief and suggest that rare though they are, they are the only possible circumstances in which the writ

is available. It would be better to recognize that error coram nobis relief may lie if there has been a fundamental error of fact extrinsic to the record that would have prevented rendition of the judgment if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward at the trial.

I concur.

**COURTNEY RAE HUDSON, Justice, dissenting**. Today we face the aftermath caused by a federal agent's grossly exaggerated testimony, which may border on "testilying." Because today's majority opinion strays from the guidance we articulated in *Strawhacker v. State*, 2016 Ark. 348, 500 S.W.3d 716, I must respectfully dissent.

When we reinvested jurisdiction in the circuit court to consider whether to grant Strawhacker coram-nobis relief, we directed the circuit court to consider whether the repudiated testimony was "material." *Strawhacker*, 2016 Ark. 348, 7, 500 S.W.3d 716, 720. We observed that evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the *result of the proceeding* would have been different." *Id*., (emphasis added) (quoting *Cloird v. State*, 349 Ark. 33, 38, 76 S.W.3d 813 (2002)). The majority today concludes that "Strawhacker failed to demonstrate that there was a reasonable probability of a different outcome—an acquittal." This "all or nothing" approach prevents Strawhacker from demonstrating other ways in which the "result of the proceeding" might have been different.

When Strawhacker committed his crimes, he was subject to a term of twenty to sixty years' or life imprisonment on the rape charge and ten to thirty years' imprisonment for battery. The jury sentenced him to life imprisonment for rape and thirty years'

14

imprisonment for first-degree battery. Thus, Strawhacker received the maximum possible sentence on each charge. As Justice Wynne noted in his dissent, agent Malone boasted that he had testified in more than 3500 cases over the course of 15 years, examined hair from more than 10,000 people, published numerous articles on hair and fiber analysis and testified as an expert more than 350 times, and had been unable to distinguish hairs on only two occasions. Even if Strawhacker would have been convicted without the repudiated evidence, the result of the proceeding could have been different in other ways. Specifically, the repudiated evidence could have affected Strawhacker's sentence to his detriment.

We have recognized the possibility that "residual doubt" may factor into a jury's sentencing decision. *State v. Torres*, 2021 Ark. 22, 617 S.W.3d 232, (citing *Lockhart v. McCree*, 476 U.S. 162, 181 (1986)). It therefore follows that repudiated evidence that tends to implicate a defendant at the guilt phase could also deprive a defendant of the benefit of any such "residual doubt" at sentencing. This sentencing issue was not present in *Pitts v. State*, 2020 Ark. 7, 591 S.W.3d 786. There, Pitts was convicted of capital murder and sentenced to life imprisonment; thus, no lesser sentence was available for Pitts.

Agent Malone was not only presented as a scientific expert, but he also carried the imprimatur of the federal government. It is unrealistic to believe that disclosure of the testimony's repudiation would not have resulted in a reasonable probability of a different outcome in Strawhacker's proceeding. I would remand for resentencing.

**ROBIN F. WYNNE, Justice, dissenting**. Because I think Malone's testimony was material to Strawhacker's conviction, I respectfully dissent.

15

When we gave Strawhacker permission to file a petition for writ of error coram nobis in the trial court, we instructed the trial court that Strawhacker is entitled to the writ if it concluded that Malone's testimony was material. *Strawhacker v. State*, 2016 Ark. 348, at 7, 500 S.W.3d 716, 720. We explained that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* We reiterated this standard in *Pitts v. State*, 2020 Ark. 7, at 6–7, 591 S.W.3d 786, 791, when we stated that the petitioner "was required to demonstrate a reasonable probability that, had the DOJ's repudiation been disclosed to the defense, the result of the proceeding would have been different."

In its order denying Strawhacker's petition, the trial court found that Malone's testimony was "not material to the State's case" because "without the testimony, there remained sufficient evidence to support the jury's finding of guilt." But the materiality inquiry is not a sufficiency-of-the-evidence test. In other words, Strawhacker did not have to show that there was insufficient evidence to support his conviction without Malone's testimony. Rather, he only had to show a reasonable probability that the outcome would have been different had it been known that Malone's testimony was erroneous. *Strawhacker*, 2016 Ark. 348, at 7, 500 S.W.3d at 720.

The United States Supreme Court has made this distinction clear in the context of *Brady* violations.[3] Materiality "is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is

---

[3]*Brady v. Maryland*, 373 U.S. 83 (1963). We have explained that the analysis to be used when assessing repudiated expert testimony in this case and in *Pitts* is similar to that used for a *Brady* violation. *Pitts*, 2020 Ark. 7, at 6, 591 S.W.3d at 791.

sufficient to support the jury's conclusions Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (citation omitted) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). The Court also explained that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. In light of this guidance, the question in this case is whether the repudiation of Malone's testimony could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. If so, there is a reasonable probability of a different outcome, and that testimony is material.

In my view, the trial court erred in finding that Malone's testimony was not material. Malone testified as an expert, and we have acknowledged that expert testimony is given special reliability and trustworthiness. *Strawhacker*, 2016 Ark. 348, at 6, 500 S.W.3d at 719. Malone was a supervisory special FBI agent who testified that he had received extensive training in hair and fiber analysis; had worked on more than 3500 cases over the course of 15 years and had examined hair from more than 10,000 people; had published numerous articles on hair and fiber analysis; and had testified as an expert witness more than 350 times. He described for the jury how he analyzed the microscopic characteristics of hairs and said that he had been unable to distinguish hairs only twice in the 10,000 analyses he had conducted.

In his expert testimony, Malone claimed that the hair found in Strawhacker's jeans was consistent with and "absolutely indistinguishable" from the victim's hair, and that the hair found in the victim's sheets was consistent with and "absolutely indistinguishable" from Strawhacker's hair. He said the chance of both those samples coming from different individuals was "extremely remote." He claimed that the probability that the hair found on Strawhacker's jeans could be from someone other than the victim was one in 5000. We now know from the Department of Justice that Malone's testimony contained erroneous statements and exceeded the limits of science in several ways.

Other evidence linked Strawhacker to the crime—witnesses placed him near the nightclub the night of the attack and near the victim's home the morning after, and the victim identified his voice out of a voice-identification lineup conducted in the hospital days after the attack. But Malone's testimony provided the only physical evidence connecting Strawhacker to the crime. Law enforcement officers testified that they took fingerprints from objects found all over the victim's home—including beer cans, the washing machine, the lavatory, objects in the bedroom, pots and pans in the kitchen—as well as the steering wheel of the victim's car, which the attacker had driven. None of those latent fingerprints were ever tested. Blood and saliva samples were also taken. None of those samples were ever tested either. At trial, Malone said that the State instructed the FBI not to test those samples because, as the prosecutor put it, "we had the hair samples that matched and we decided to go with that instead of you all conducting these other tests on the saliva and the blood and the fingerprints." Malone did admit that the hair analysis provided a less definitive identification than fingerprints. But the jury also heard that the State felt so

18

confident that the hair samples "matched" that it did not even bother testing evidence that would be more conclusive.

The prosecutor also repeatedly emphasized Malone's testimony in his closing argument:

> And ladies and gentlemen, if that's not enough, the State had the luxury of being able to present to you during the course of this trial some very good scientific evidence, which I think is the final blow to the defendant's case in this case and proves him guilty beyond any reasonable doubt in this particular case. And that's the hair samples that the State took great pains to introduce to you during the last two (2) days of testimony by admitting all this evidence in and bringing down an FBI agent from Washington, D.C., to testify for you.

> . . . .

> Ladies and gentlemen, the odds of having two (2) hair samples that match up, even though they're not fingerprints, and exclusive of all other hair samples Mr. Malone told you that in fifteen (15) years and ten thousand (10,000) worth of hair samples that only twice has he had hair comparisons that maybe matched up or he could not rule out were more than one person. Twice in fifteen (15) years. And to have two (2) separate hair samples in this particular case, one just happening to be consistent with the victim's hair found on the defendant's pants and one just happening to be consistent with the defendant's hair on the victim's sheet. When I asked him statistically what the odds are of that happening he said that was very remote. Ladies and gentlemen, I think you can use that scientific evidence in this case and you can reasonably conclude that those hair samples found on the victim's sheet came from the defendant and that hair samples found on the victim—on the defendant's pants came from the victim in this case.

> . . . .

> The law only says I have to prove my case beyond a reasonable doubt. And that's what the hair samples do in this case.

And the prosecutor later advised the Department of Justice that Malone's testimony was material to Strawhacker's conviction. While the prosecutor's characterization of Malone's testimony as material is not dispositive, it is nonetheless compelling.

19

Strawhacker has demonstrated a reasonable probability that, had it been known that Malone's testimony was erroneous, the outcome of his trial would have been different. The State "took great pains" to introduce the hair-analysis evidence, flying Malone from the FBI lab in Washington, D.C., to give inculpatory expert testimony we now know was riddled with errors. The State argued to the jury that Malone's testimony was the "fatal blow" to Strawhacker's case and proved his guilt beyond a reasonable doubt. No other physical evidence was introduced at trial—in fact, fingerprints, blood samples, and saliva samples were not even tested because the State thought the hair analysis was so compelling. The repudiation of Malone's testimony puts the whole case in such a different light as to undermine confidence in the verdict. *Kyles*, 514 U.S. at 435. Simply put, Strawhacker did not get a fair trial. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87.

Because Malone's testimony was material to Strawhacker's conviction, I would hold that the trial court abused its discretion in denying the petition for writ of error coram nobis. Accordingly, I would reverse and remand for entry of an order granting Strawhacker a new trial.

WOOD, J., joins.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.

20